HIRAM ROGERS & others *vs.* CITY OF ST. PAUL.

April 8, 1876.

Constitution — Meaning of Term "Local Improvements." — The term "local improvements," in the constitutional amendment of 1869, (see Laws 1869, ch. 51,) signifies improvements made in a particular locality, by which the real property adjoining or near such locality is specifically benefited.

Local Improvements—City of St. Paul—Powers of Council.—Under the provisions of "An act to authorize the city of St. Paul to levy assessments for local improvements," approved March 6, 1871, as amended February 29, 1872, the determination of the question whether the special benefits which

will result from a proposed local improvement will be as great as the expense of making it, or, in other words, whether the improvement can be paid for without subjecting the property specially benefited to taxation in excess of the special benefits, as well as the whole matter of ordering the improvement to be made, is submitted to the common council, and their determination in the premises is final and conclusive, unless, perhaps, in case of fraud or mistake. It was competent for the legislature to give this final and conclusive effect to the determination of the common council.

**Same—Power of Board of Public Works.**—The act above cited is not unconstitutional or invalid because it permits a contract for the making of a local improvement to be let without any restriction upon the board of public works as to the price to be paid.

**Constitution—Tax Districts—Assessments for Local Improvements—Powers of Board of Public Works of St. Paul.**—In respect to the assessment of the expense of making a particular local improvement, the board of public works exercises an authority with which it is competent for the legislature to invest it. When money is to be raised by taxation, it is for the legislature, in its discretion, to determine how much should be raised, and for what purpose, and to mark out the boundaries of the tax district; or, to provide for the determination of the amount to be raised, and the purpose of raising it, and for the designation of the tax district, by some subordinate authority; it being, of course, necessary that the purpose of the taxation should specially pertain to the tax district.

**Local Improvements in St. Paul—Respective Powers of Council and Board of Public Works.**—Under the act above cited the determination of the purpose for which money shall be raised is committed to the common council, the determination of how much shall be raised is to some extent committed to both the common council and the board of public works, while the marking out of the boundaries of the tax district is committed to the latter exclusively. Upon the subject thus committed to it, the action of the board of public works is conclusive, and it was competent for the legislature to make it so.

**Same—Description of Pavement in Proposition and Order for Improvement.**—In the proceedings in this case the common council's order of reference propounded to the board of public works the question whether the paving of Third street, with a Nicholson pavement or other wooden pavement, was proper and necessary. The report of the board answers this question in its own terms in the affirmative. The final order of the council directs that Third street, from the so-called Seven Corners to Sibley street, be paved with a " wooden block pavement." *Held,* that these descriptions of the pavement were sufficient; the generality of the description in the final order of the council is not an unlawful attempt on the part of the council to delegate to the board of public works the power, and to impose upon it the duty, of determining the character of the improvement. In accepting a bid for a particular kind of pavement, the board is not performing the functions of the

council in determining the character of the improvement, but is dis-
charging its duty to let the work to the lowest bidder, cost and quality
considered.

**Same—Plan and Specifications for Paving, held Sufficient.**—The provisions of
§ 27 of the act cited, in reference to a plan and profile of a proposed improve-
ment, and in reference to specifications for doing the same, *held* to have been
sufficiently complied with in this case.

·On July 10, 1873, the common council of the city of St.
Paul passed and transmitted to the board of public works
of that city a resolution referring to the board a petition
for the paving of Third street, from the Seven Corners (so-
called) to Sibley street, requesting the board to report to·
the council: 1. Is the paving of Third street, with a Nich-
olson pavement or other wooden pavement, proper and
necessary?   2. What will be the approximate costs, damages
and expenses thereof?   3. Can real estate to be assessed
for the costs, damages and expenses of such pavement be
found benefited to the extent of such damages, costs and
expenses?   4. Is the grading of Third street, from the
so-called Seven Corners to Sibley street, necessary and
proper?   5. Give an estimate of the costs, damages and
expenses of such grading.   6. Send a plan and specifica-
tion of such grading improvements.   7. Send the council
the proper order directing the work for the future action of
the council.   On July 11 the board reported to the council,
answering the first, third and ·fourth questions in the affirma-
tive, stating that the approximate costs, etc., would be
$42,540.00, giving an estimate of the cost, etc., of grading,
curbing and necessary retaining-wall, and sending a plan
and specifications of the "grading improvements," and the
order requested.   The plan consisted of a cross-section of
the street, showing the thickness of pavement, the slope
from centre of street to centre of gutters, and from centre
of gutters to the curbing, and the level of the pavement as
compared with the level of the sidewalk.   The specifica-
tions related merely to grading the street to a depth of one

and one-tenth feet below the then established grade, with proper crown for reception of the paving, etc.

On July 15, 1873, the council made an order that Third street, from the so-called Seven Corners to Sibley street, be paved with a wooden block pavement with a wooden curbing; that Third street be graded, and the necessary retaining-walls built, according to the plans and specifications sent to the council by the board; that the board advertise for bids for paving Third street, from and to the points indicated, with a wooden block pavement, and wooden curbing; that the board proceed to let the necessary contracts, and carry out the order as required by law. The order also provided that, in case of a patented pavement, the bidder should show his right to use the same, and give the city the right at all times to relay and repair the pavement, and that the grading, paving, etc., should be paid for in the city of St. Paul improvement bonds, at 90 cents on the dollar, or in the cash proceeds of such bonds, and that the amount paid should be reimbursed to the city by an assessment upon the real estate benefited by the improvement, in proportion, as nearly as may be, to the benefit resulting to each particular or separate lot or parcel of land, as provided by law. Afterward, and during the period from July 18 to July 31, 1873, the board advertised for sealed bids for constructing the improvement, the advertisement referring to plans and specifications to be seen at the office of the clerk of the board and at the city engineer's office. Neither before nor during the publication of the advertisement were any plans or specifications deposited in the office of the board, or in any other public office, describing the kind or pattern of pavement to be laid down, or describing the materials of which it was to be constructed, any further than that it was to be a " wooden block pavement." In response to the advertisement five persons submitted bids for paving the street with wooden block pavement, according to specifications prepared by the bid-

ders, and accompanying their respective bids, and four of
them also submitted bids for grading, etc., in accordance
with the specifications prepared by the board.   The follow-
ing is a summary of the bids:

| NAME OF BIDDER. | KIND OF WOODEN BLOCK PAVEMENT. | PRICE. |
|---|---|---|
| | (All patented except " Chicago " and "Stow Improved.") | |
| Leonard H. Patchen, | Stow Improved, 4x6...... | $1.18 per sq. yard. |
| | Stow Improved, 4x8...... | 1.29 per sq. yard. |
| | | Curbing, 12 cts. per linear foot. |
| | | Grading, $4,300.00. |
| | | Retaining-wall, $6,525.00. |
| E. Kelley & Co...... | Nicholson...................... | $1.66 per sq. y'd. ⎫ 18 cents addi- |
| | De Golyer....................... | 1.66 per sq. y'd. ⎬ tional for bl'ks |
| | Chicago........................ | 1.74 per sq. y'd. ⎭ 4x8. |
| | | Curbing, $786.00. |
| | | Grading, $5,500.00. |
| | | Retaining-wall, $6,105.00. |
| R. S. Robertson...... | Stow Foundation, 4x6... | $2.00 per sq. yard. |
| | | Curbing, 12 1-2 cts. per linear ft. |
| | | Grading, $4,300.00. |
| | | Retaining-wall, $6,525.00. |
| E. P. Smith............ | Nicholson, 1 in. plank, 3x6 block.................. | $1.76 per sq. y'd. ⎫ |
| | Nicholson, 1 1-2 in. pl'k, 5x6 block.................. | 1.85 per sq. y'd. ⎬ Including curbing. |
| | De Golyer, 4x8 block... | 1.95 per sq. y'd. ⎪ |
| | Chicago, 4x8 block........ | 1.64 per sq. y'd. ⎭ |
| Chas. Eaton............ | Ballard, lock block........ | $46,472.60 ⎫ For grading, paving, |
| | | ⎬ curbing and building |
| | Ballard, wedge block..... | 44,255.00 ⎭ retaining-wall. |

   The contract was let to Patchen as the lowest bidder, and
the work was done by him in the fall of 1873.   After the
letting of the contract, and in October, 1873, the board of
public works made and confirmed an assessment of the
expenses of the improvement upon property in the vicinity.
Certain property owners refusing to pay the assessment, the
city took the proper steps for its collection, and applied to
the court of common pleas of Ramsey county for judgment
against the lots on which the assessment had not been paid,
for the amount of the assessment, with interest and costs.
At the day appointed for hearing the application, the prop-
erty owners appeared and filed objections to the entry of

judgment. The proceedings above recited were put in evidence, and it was admitted that Third street is the principal thoroughfare of the city, and that there are many different kinds of wooden pavements, differing greatly in expense, value, durability and mode of construction. The objections were overruled by *Simons*, J., and judgment ordered and entered against the property. A statement of the case was sealed by the judge and made part of the record, on which the objectors moved for a new trial, which was denied. An appeal from the order refusing a new trial was dismissed, (*City of St. Paul* v. *Rogers, ante* p. 492,) whereupon the objectors caused the record and proceedings of the court of common pleas to be brought to this court by *certiorari*.

*Gilman, Clough & Lane,* for plaintiffs in error.

The court below erred in holding the assessment to be valid. 1. When it was made no valid law existed authorizing such assessments. 2. If the law under which it was attempted to be made was valid, the proceedings failed to conform to essential requirements of that law.

1. It is an implied limitation on the taxing power, inherent in the power itself, that the burden imposed shall not exceed the basis of apportionment. A general tax must not exceed the value of the property taxed, and a special assessment for benefits accruing to property from an improvement must not exceed the amount of such benefits. *Canal Bank* v. *Mayor, etc., of Albany,* 9 Wend. 244; *City of Chicago* v. *Larned,* 34 Ill. 203; *City of Ottawa* v. *Spencer,* 40 Ill. 211; *Wright* v. *City of Chicago,* 46 Ill. 44; *St. John* v. *City of East St. Louis,* 50 Ill. 92; *Lee* v. *Ruggles,* 62 Ill. 427; *Hammett* v. *Philadelphia,* 65 Penn. St. 146; *Washington Avenue,* 69 Penn. St. 352. The constitution of the state also imposes express limitations on the taxing power, requiring that all taxes shall be as nearly equal as may be, and that all property on which taxes are to be levied shall have a cash valuation, and be equalized and uniform through-

out the state. The only exception to this rule is that provided by the amendment of 1869 in cases of assessments for local improvements.

The law under which this improvement was made and the assessment levied was invalid as to all cases whatsoever, because it did not warrant to the property owner a constitutional mode of taxation. The tax payer has a right to require that a law imposing a general tax shall warrant to him equality, as far as possible, with others, and that the law shall make it the duty of some officer or officers to see that in all cases, and under all circumstances, the property is given a just and fair valuation, and one equalized and uniform throughout the state. It is not enough that the valuation may happen to be equal and uniform, but such equality and uniformity must be assured to the tax payer by the law itself. And so the owner of property, on which a special assessment is levied, has a constitutional right to be protected against an assessment greater than the value of the benefits for which the assessment is made. The law providing for the assessment must warrant to the property owner that he shall not, under any circumstances, be compelled to pay an assessment exceeding the amount of the benefits received by him ; and such a law can only be good when it does not leave the rights of the property owner to mere chance, but makes it the absolute duty of those who are to execute it to proceed in all cases in such a way that the assessment shall not exceed the benefits.

The first step required by the law in question, in making an improvement under it, was that the proposition for making it should be referred by the common council to the board of public works. The board was then to examine into the propriety of making the improvement, its probable expense, etc., and to report touching those matters to the council. If the board should report in favor of making the improvements—and in that case only—it was required further to specially report whether, in its opinion, property to

be assessed therefor could be found specially benefited to the amount of the damages, costs and expenses necessary to be incurred thereby. The council, on the coming in of this report, was left by the law entirely free to follow its own inclinations, irrespective of the report. It might order or decline to order the improvement, as it should see fit, and it might order any modification of the improvement, as originally submitted to the board, that it should see fit. If the council should order the improvement to be made, it was declared to be the duty of the board to thereupon let the contract for it to the lowest bidder, and, after the letting of the contract, to assess the entire expenses, damages and costs, whatever they might be, upon the property specially benefited by the improvement.

At two points in these proceedings the rights of the property owner to be protected from over-taxation were left to chance : *First*, in ordering the work to be done ; for the council was in all cases left entirely free to order an improvement without it first having been ascertained whether the benefits would be equal to the cost. *Second*, in the letting of the contract without any restriction on the board as to the price ; for the board, when the improvement was ordered, was bound to proceed to let the contract for it to the lowest bidder, even though the lowest bid should be many times the amount of all benefits to property that could result from the improvement, and even though such bid should be much greater than the original estimate of the board, on which the board had decided that property could be found benefited to the amount of the cost.

The law was void as to this particular assessment because the improvement is not local, within the meaning of the constitution. Third street being the principal thoroughfare of the city, such an improvement is a benefit to the whole city, and the fact that it specially benefits the property owners along the street does not make it local any more than the building of a city hall or of a bridge across the Mississippi

river would be a local improvement, the entire cost of which should be assessed upon property in the neigborhood, simply because such property was specially benefited by it. The law was fatally defective, inasmuch as it disregarded the distinction between (1) public improvements, (2) local improvements, and (3) improvements at the same time both local and public, and put all the burden of improvements like this one, which are partly public and partly local, upon the specially benefited property. *City of Chicago* v. *Larned*, 34 Ill. 203. In *Hammett* v. *Philadelphia*, 65 Penn. St. 146, the paving of Broad street, in Philadelphia, a street of much less relative importance than Third street, was held to be a public and not a local improvement, the cost of which could not be imposed on property benefited, but must be borne by the public; and this decision was adhered to on reargument, and was affirmed in *Washington Avenue*, 69 Penn. St. 352.

2. But, assuming the law to be constitutional and valid, the law itself was not followed in the proceedings resulting in this assessment. The omission in the original order of reference, in the report of the board, and in the final order of the council for doing the work, to specify any kind or pattern of pavement, or the mode of its construction, was fatal to the proceedings, because (1) without the kind and pattern of pavement being fixed upon the cost could not be ascertained, and it was impossible to determine whether or not property could be found benefited to the extent of its cost; and (2) the direction of the council in the final order that the street be paved, without designating the kind or pattern of pavement to be laid down, was an unlawful attempt by the council to delegate to the board the power, and impose on it the duty, of determining the character of the improvement. The improvement is to be made only in case property can be found specially benefited to the amount of its cost. The property benefited is to be assessed for the full amount of the cost, and in no case can it be lawfully assessed

to an amount greater than the benefits received. It must therefore be definitely ascertained, before the improvement is ordered, whether the benefits will equal the cost, and this comparison cannot possibly be made until the cost and the amount of special benefits have been ascertained; and neither the cost nor the special benefits to specific lots of land can be arrived at until the exact character of the improvement has been defined. This is especially true of an improvement of this kind. The expression "wooden block pavement" has no definite or fixed meaning. It applies equally to a work costing 50 cents and to one costing $4.00 per square yard; to one that would be a worthless encumbrance of the street, and to one that would be of real benefit and value. By the original order, therefore, the council did not refer any specific proposition to the board, and when the board, in pursuance of the reference, undertook to enquire whether the paving of Third street with a wooden block pavement was necessary and proper, and would specially benefit property to the extent of its cost, and transmitted the result of such enquiry to the council, it did not enquire into any particular subject-matter, and did not advise the council touching any specific improvement. Beyond question the improvement actually made was never referred by the council to the board, nor reported on by the board to the council. No report, therefore, was ever made by the board to the council as to whether property could be found benefited by the improvement actually made to the extent of the' expense necessary to be incurred thereby, and for this reason, if for no other, the proceedings were invalid.

The final order of the council, directing the board to make the improvement, merely directed a wooden block pavement, without specifying what one of many totally different kinds or patterns of pavements, varying greatly in expense, should be laid down. It was left to the board to determine whether it should be a pavement costing 50 cents, $1.00, $2.00 or $4.00 per yard—one of a pattern

well tested and approved, or one built of the last contrived and untried process. The character of the improvement, which by the law should be prescribed by the council, was left to the discretion of the board, not only in a few respects, but in almost all respects. The delegation by the council of a discretion much less than was delegated to the board in this case has been held to render the proceedings void. *Foss* v. *City of Chicago*, 56 Ill. 354; *Andrews* v. *City of Chicago*, 57 Ill. 239; *Moore* v. *City of Chicago*, 60 Ill. 243; *Wright* v. *City of Chicago*, Id. 312; *McDonnell* v. *City of Chicago*, Id. 359; *Bryan* v. *City of Chicago*, Id. 507; *Walker* v. *City of Chicago*, 62 Ill. 286; *Thompson* v. *Schermerhorn*, 6 N. Y. 92; Dillon Mun. Corp. §§ 60, 618.

The omission to have plans and specifications made and deposited with the clerk of the board, for the inspection of bidders, before advertising for bids, and the further omission in the advertisement to call for bids for any particular kind of pavement, and the call in the advertisement for bids for all kinds of pavement indifferently, were fatal to the proceedings, because they wholly prevented that competition for the contract for doing the work, the benefits of which the law secured to the tax payer.

Where municipal officers are required to let a contract to the lowest bidder, a contract made in any other way will not even be binding on the corporation, much less will it support an assessment. Dillon Mun. Corp. §§ 373, 388, 390. It has been held that where the charter required all contracts for street improvement to be let, after advertisement for proposals, to the lowest bidder, a lawful contract could not be made by the city officials for paving a street according to a patented process, and this because there can be no competition in an article of which the owner of the patent has a monopoly. *Dean* v. *Charlton*, 23 Wis. 590; *Nicholson Pavement Co.* v. *Painter*, 35 Cal. 699; *Burgess* v. *City of Jefferson*, 21 La. An. 143. In *Hobart* v. *City*

of *Detroit*, 17 Mich. 246, and *Atty. Gen.* v. *City of Detroit*, 26 Mich. 263, though it is held that there may be competition in a patented article, there is nothing tending to sustain the proceedings in this case. *Matter of Dugro*, 50 N. Y. 513, was decided on the peculiar provisions of the city charter of New York. *Nash* v. *City of St. Paul*, 11 Minn. 174, is a direct authority upon the point that where the law requires contracts to be let only upon public competition, and to the lowest bidder, any departure from the mode of procedure pointed out will be fatal to the proceedings.

In this case there were no plans or specifications for the pavement prepared for the inspection of bidders, nor was any particular kind of pavement described in the advertisement, and hence there could not have been that competition among bidders which the law guarantees to the property owner. There can be no competition among bidders unless the thing for which they are to bid is something definite and certain, so that the minds of all competitors can be directed to the same point. The law in this case required plans and specifications to be filed before bids are advertised for, because in this way only can the attention of bidders be directed to the same point, and any competitive bidding whatever made possible. Without such plans, etc., all that a bidder can do is to submit a plan of his own, and offer to do the work according to it, and for a specified sum. There is nothing competitive in this. No other bidder can make any offer touching the same work, especially where the bidding is done secretly, by sealed proposals, as was provided by the law under which Third street was paved.

And not only were no plans or specifications filed, but no particular kind of pavement was described in the advertisement. The reason why the public were not asked to bid for a particular kind of pavement, or for paving the street in a specified and definite manner, was because the city authorities had made no selection of the kind of pavement, or the

manner of paving the street. That was not done till the bidding was over. The plan adopted and set forth in the advertisement was for each bidder to select his own kind of pavement, and make his own plans and specifications therefor, and then state to the board for what he would lay such a pavement; and that was the plan acted on. Each bidder offered to do a different thing, in a different way, and, of course, for prices not based upon the idea that any other bidder would offer to do the same thing. In this there was not the slightest competition or chance for competition. No bidder could have the slightest knowledge of the character of the work which any other bidder was offering to do; and the provisions of the statute prescribing how contracts for improvements should be let could not have been more utterly disregarded, both in letter and spirit, than they were.

*W. A. Gorman* and *H. J. Horn*, for defendant in error.

BERRY, J. This case calls in question the validity of certain proceedings for grading, curbing and paving a portion of Third street in the city of St. Paul. The proceedings were had under provisions of "an act to authorize the city of St. Paul to levy assessments for local improvements," approved March 6, 1871, (Sp. Laws 1871, ch. 32,) as amended February 29, 1872. Sp. Laws 1872, ch. 2. The act and amendment were passed under § 1, art. 9, of our constitution, as amended in 1869, (see Laws 1869, ch. 51,) so as to read as follows, viz.: "All taxes to be raised in this state shall be as nearly equal as may be, and all property upon which taxes are to be levied shall have a cash valuation, and be equalized and uniform throughout the state; provided that the legislature may, by general law or special act, authorize municipal corporations to levy assessments for local improvements upon the property fronting upon such improvements, or upon the property to be benefited by such improvements, without regard to a cash valuation, and in such manner as the legislature may prescribe."

1. The plaintiffs' counsel contend that, Third street being

the principal thoroughfare of the city of St. Paul, the grading, curbing and paving of a portion thereof, as in this instance, were not "local improvements."

By common usage, especially as evidenced by the practice of courts and text-writers, the term "local improvements" is employed as signifying improvements made in a particular locality, by which the real property adjoining or near such locality is specially benefited. Cooley on Taxation, 109, 110, 177, 419, 423, 447, 459 ; Dillon, Mun. Corp. §§ 400, 401, 586, 596, 597, and many cases cited by these authors ; *Dorgan* v. *City of Boston*, 12 Allen, 223. An examination of these authorities will also show that the term "local improvements," or terms synonymous, are more commonly applied to the grading, curbing and paving of streets than to any other class of improvements.  Our constitution is to be presumed to have employed the term "local improvements" in the sense which is thus attributed to it by common usage.  That this was *in fact* the sense in which the term in question was used in the constitution will, perhaps, be further apparent when it is considered that the local improvement amendment was adopted in 1869, specially in view of the decision in *Stinson* v. *Smith*, 8 Minn. 366. A consideration of the difficulties presented by that case, and of analogous difficulties which will readily suggest themselves, will tend to confirm the notion that the amendment of 1869 designed to remedy the defects of the original constitution by using the term "local improvements" in the sense indicated above.

From this constitutional amendment it follows that the fact that the street to be improved is the most public thoroughfare in the city does not prevent the improvement from being "local ;" but the *local* character of the improvement depends upon the special benefit which will result to the real property adjoining or near the locality in which the improvement is to be made.

2. The plaintiffs contend that the proceedings in ques-

tion are invalid because the law under which they were had does not insure to the property owner a constitutional mode of taxation. The principle of local assessments is that the special benefits which will accrue to a property owner from a proposed local improvement will be at least equal to the tax assessed upon his property on account of such improvement. Cooley on Taxation, ch. 20; Dillon Mun. Corp. § 596. It is accordingly well argued by plaintiffs' counsel that the law under which local improvements are to be made should keep this principle in view, and should, therefore, provide in some reasonable way for the protection of the property owner from over-taxation—that is to say, from taxation exceeding special benefits. The plaintiffs claim that the law under consideration has failed to do this —and is, therefore, unconstitutional—because, at two points in the proceedings, the right of the property owner to be protected from over-taxation is "left to chance." The first of these points is in ordering the work to be done without enquiring "whether the special benefits accruing to property will balance the assessment that would have to be imposed to pay for the same."

Under the provisions of § 5 of the act in question, applications for local improvements (sidewalks excepted) are referred by the common council to the board of public works, which is required "to proceed to investigate the same," and report. Upon the coming in of the report it is the duty of the common council to determine whether or not the improvement shall be made. The effect of this is to finally submit the whole question of making a proposed improvement to the decision and discretion of the common council. It is for the common council to determine this question, by the aid of the report of the board of public works, and by resorting to such other means and sources of information as will, in their judgment, enable them to arrive at a correct conclusion. Among other matters into which it is necessarily their duty to enquire, in order to

arrive at a correct determination of the general question before them, is whether the special benefits which will result from the proposed improvement will be as great as the expense of making it ; or, in other words, whether the improvement can be paid for without subjecting the property specially benefited by it to taxation in excess of the special benefits.   The effect of the act under consideration is to make their determination of this question, as well as of the whole matter of ordering the improvement to be made, final and conclusive, unless, perhaps, in case of fraud or mistake.

As respects taxation, the authority of the legislature is limited only by the constitution and the nature of taxation itself.   Cooley on Taxation, ch. 2.   It was, therefore, competent for the legislature to give this final and conclusive effect to the determination of the common council—that is to say, it was competent for the legislature to enact that their determination, as a part of the machinery of taxation, should be final and conclusive, as respected the question whether a proposed local improvement was of such a character that the amount of taxes necessary to be raised to pay for the expense of making it would exceed the special benefits which would result from its accomplishment.

The second point in the proceedings, at which, as the plaintiffs contend, the rights of the property owner are left unprotected by the law from unconstitutional over-taxation, is in the letting of the contract to make the proposed local improvement without any restriction upon the board of public works as to the price to be paid.

The final and conclusive determination of the common council, that the case of a proposed improvement is one in which the requisite taxation will not exceed the special benefits, is to be taken as involving and depending upon the idea that the improvement will be made at a fair price.   Now, when the contract comes to be let, it is put up at auction, (so to speak,) and awarded to the lowest bidder.   The

practice of selling at auction is allowed, authorized, or required by law in a multitude of cases, as, for instance, in sales upon execution, mortgage sales, judicial sales of all kinds, sales by lien-holders, etc. In all these cases the law proceeds on the theory and presumption that upon a sale at auction, where free competition is allowed, property does bring a fair price. *Mutatis mutandis*, the same presumption is applicable to the letting of a contract for a local improvement, as provided in the law under consideration. If, through any unfair practices, the operation of this presumption is prevented, a remedy will not be wanting.

In respect to the assessment of the expense of making a particular improvement, the board of public works exercises an authority with which it is competent for the legislature to vest it. When money is to be raised by taxation, it is for the legislature, in its discretion, to determine how much shall be raised, and for what purpose, and to mark out the boundaries of the tax district, or to provide for the determination of the amount to be raised, and the purpose of raising it, and for the designation of the tax district, by some subordinate authority—it being, of course, necessary that the purpose of the taxation should especially pertain to the tax district. Cooley on Taxation, ch. 5, and pp. 449–451. It is upon this principle that towns, cities and counties are made tax districts for the purpose of laying out and constructing public highways, and of keeping the same in repair, and their officers are also invested with authority to determine how much money shall be raised for these purposes, and upon what particular highway it shall be expended. So, by the provisions of the act under consideration, the determination of the purpose for which money shall be raised is committed to the common council, the determination of how much shall be raised is, perhaps, to some extent, committed to both the common council and the board of public works, while the marking out of the boundaries of the tax district is committed to the latter exclusively. Upon the subject thus

committed to it, the action of the board of public works is conclusive. The provisions of the act under consideration declare it to be so, and it was entirely competent for the legislature to give the action of the board this conclusive character. Cooley on Taxation, 449–451.

So far as the *manner* of levying assessments is concerned, the constitutional amendment declares that it may be "such as the legislature may prescribe."

But, assuming the constitutionality of the law, the plaintiffs contend that the law was not followed in the proceedings involved in this case, *first*, because neither the order of the council referring the application for the improvement to the board of public works, nor the report of the board, nor the final order of the council, described " any particular kind or pattern of wooden block pavement, or any particular mode of constructing the same."

The order of reference propounded to the board the question whether " the paving of Third street, with a Nicholson or other wooden pavement, was proper and necessary?" The report of the board answers this question in its own terms in the affirmative. The final order of the council directs that Third street, from the so-called Seven Corners to Sibley street, be paved "with a wooden block pavement." When it is observed that there are many kinds of wooden pavement, that many of them are patented, that the whole matter of a proposed improvement appeals largely to the discretion of those entrusted with its accomplishment, and that this discretion should be so exercised as to secure such a pavement as will be for the best interest of the parties concerned, cost and quality considered, we think these descriptions must be regarded as sufficient. A description of any one only of the many kinds of wooden pavement would very much narrow the field of competition among the bidders for the contract of making the improvement. If the description were of one of the patented kinds the effect might be to prevent competition altogether, and to place

the property owners to be taxed at the mercy of a patentee. Even if it did not have this effect, it would deprive the property owners of the benefit of the competition of all other patentees.

It was not necessary that the particular kind of pavement to be adopted should be fixed upon in order to determine whether the cost of the improvement would not exceed the special benefits resulting from it. The work is required to be let to the lowest bidder—that is to say, to the person whose bid is the lowest, considering the character and price of the work which he proposes to do. With this requirement of the law in view, there is no reason why the council or board of public works might not, after an enquiry into the respective merits and cost of the different kinds of wooden pavement, make a reasonably satisfactory comparison of cost and special benefits.

Neither does the generality of the description contained in the final order of the council to the board of public works amount, as counsel contend, to an " unlawful attempt on the part of the council to delegate to the board the power, and to impose upon it the duty, of determining the character of the improvement." The council ordered a " wooden block pavement " to be constructed, and this description we have already determined to be sufficiently specific. Upon the receipt of the order it becomes the duty of the board to proceed to let the contract. The character of the improvement has been already determined by the council as " a wooden block pavement." In accepting a bid for a particular kind of wooden block pavement, the board is not performing the functions of the council in determining the character of the improvement, but is discharging its duty to let the work to the lowest bidder, cost and quality considered.

Another position taken by plaintiffs' counsel in support of his claim, that the provisions of the law have not been complied with, is that " the omission to have plans and

specifications of the proposed improvement made and deposited with the clerk of the board, for the inspection of bidders, before advertising for bids, and the further omission in the advertisement to call for bids for any particular kind of pavement, and the call in the advertisement for bids for all kinds of pavement indifferently, were fatal to the proceedings, because they wholly prevented that competition for the contract for doing the work, the benefits of which the assessment law secured to the tax payer."

Section 27 of the act before cited provides that when a public improvement for which an assessment is to be made is ordered, the board of public works "shall cause proposals for doing said work to be advertised in the official paper of the city, a plan and profile of the work to be done, accompanied with specifications for doing the same, being first deposited with the clerk of said board, to be kept by him at all times open for public inspection, which advertisement shall state substantially the work to be done." The case shows that, before the publication of the advertisement for bids, specifications for grading, preparatory to paving, and a cross-section of the pavement proposed to be laid, were deposited with the clerk of the board. The cross-section shows the thickness of the proposed paving, its level as compared with the level of the sidewalks, its slopes from the centre of the street to the centres of the gutters on each side, and from the centres of the gutters to the curbing. It is certainly " a plan and profile of the work to be done," and we see no reason to question its sufficiency. The requirement of accompanying specifications is to be construed with reference to the nature of the purposed improvement. In view of the conclusion to which we have arrived, as to the sufficiency of the description of the proposed improvement as " a wooden block pavement," we are of opinion that the case of the paving in question was not one in which the board is required, in the exercise of

sound discretion, to furnish any more particular specifications than those which appear upon the cross-section.

With reference to the generality of the advertisement, it is unnecessary to add anything to what we have already said upon the sufficiency of the description of the pavement contained in the order of the common council, especially in view of the fact that the law only requires that the advertisement " shall state substantially the work to be done."

Judgment affirmed.