IN RE VILLAGE OF BURNSVILLE ASSESSMENTS
FOR SANITARY SEWER.
EDWARD KRAEMER & SONS, INC. v.
VILLAGE (NOW CITY) OF BURNSVILLE.

245 N. W. 2d 445.

August 13, 1976—Nos. 45468, 45632.

*LeFevere, Lefler, Hamilton & Pearson* and *John E. Drawz,* for appellant.

*Johnson & Eastlund, George R. Johnson,* and *Ralph W. Peterson,* for respondent.

*Holmes, Eustis, Kircher & Graven* and *David L. Graven,* for Metropolitan Waste Control Commission, amicus curiae, seeking reversal.

Heard before Todd, Yetka, and Marsden, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

These are appeals, one from the judgment of the District Court of Dakota County vacating a special assessment levied by the Village (now City) of Burnsville on the subject property, and one from an order denying Burnsville's motion for a new trial. We reverse and remand.

The improvement which formed the basis of the assessment is Sewer Project 70-30 of the Metropolitan Waste Control Commission (MWCC). This project is an interceptor sewer designed to carry all of Burnsville's sewage out of Burnsville to a new treatment plant in Eagan Township. The $3.4 million cost of the project was borne by the MWCC, and Burnsville, as well as other communities, and that expense is billed by MWCC in the manner described below.

The property involved in this appeal consists of 643.97 acres, the north edge of which abuts the Minnesota River and the east edge of which abuts Interstate Highway No. 35W. It lies within three floodplain zones of the Lower Minnesota River Watershed District, and severe limitations are placed on what improvements can be constructed thereon. Presently, the property is zoned gen-

eral industrial and is being used as a rock quarry and sanitary landfill. The trial court found that this use is the highest and best use of the land. Other property in Burnsville was assessed for this improvement, but only that property owned by respondent, Edward Kraemer & Sons, Inc. (Kraemer), is the subject property of this appeal.

In 1963, while a township, Burnsville adopted a policy of assessing industrial and commercial property at $300 per acre as trunk sewer service is provided to it. In 1965, as a village, it adopted the same policy. Over time, almost all of the property in Burnsville had been assessed with the exception of the property involved in this appeal. Some sewer service had been provided to this property in 1967 when trunk service was provided to adjoining property, but the city contends that the subject property was not provided with trunk service and was not assessed at the $300 rate. The city contends that the improvement at issue provided trunk sewer service to the subject property for the first time, that this constitutes a special benefit to the property, and that the city is entitled to assess the property therefor.

Testimony was conflicting as to whether or not the improvement enhanced the market value of the subject property. Estimates of increase ranged from $0 to $290,000. The assessment on this property equaled $193,206. (The total assessment levied against all of the land benefited, of which the Kraemer properties are only a part, equaled $865,660.80.)

Kraemer appealed from the assessment. The trial court found, after trial, that the best use of the property in the foreseeable future is as a quarry and landfill, and that, as so used, the property would not receive any benefit from the improvement. The court also entered findings, further explained by a memorandum, which indicated that it believed a municipality may not assess for improvements constructed by the MWCC. The court made no findings as to whether the improvement provided the subject property with trunk sewer service for the first time or as to

whether the market value of the property was enhanced by virtue of this improvement.

The issues raised on this appeal are:

(1)  May the village levy special assessments to pay for an interceptor sewer constructed and owned by the Metropolitan Waste Control Commission?

(2)  Did the improvement confer a special benefit upon the subject property in an amount at least equal to the assessment?

The Metropolitan Waste Control Commission (MWCC) was established by Minn. St. 1974, c. 473C.[1] Under Minn. St. 473.517, subd. 4,[2] it charges local governmental units in two ways for the cost of constructing and operating projects such as Sewer Project 70-30. Part of the charge is based upon the relative volume of sewage discharged into the project by the governmental unit; the rest of the charge is a reserve or service availability charge ("SAC"), which is also apportioned. The validity of this formula was upheld in City of Brooklyn Center v. Metropolitan Council, 306 Minn. 309, 243 N. W. 2d 102 (1975).

Minn. St. 473.521, subd. 3,[3] provides that local governmental units may exercise the powers granted them by Minn. St. c. 429 and § 444.075, among others, in order to accomplish any duty imposed upon these units by the MWCC. Minn. St. 429.051 authorizes a local governmental unit to levy special assessments to pay for local improvements. Section 444.075, subd. 4, authorizes a local governmental unit to levy special assessments to pay for waterworks, sewers, and disposal plants. Thus, local governmental units are now authorized to levy special assessments to pay MWCC charges.

Kraemer argues, however, that this project is not an "improvement" constructed by Burnsville under c. 429, and that the

---

[1] The provisions of Minn. St. 1974, c. 473C, were repealed by L. 1975, c. 13, § 147, and substantially reenacted in Minn. St. 473.501 to 473.549 (L. 1975, c. 13, §§ 76 to 93).

[2] Formerly Minn. St. 1974, 473C.08, subd. 4.

[3] Formerly Minn. St. 1974, 473C.09, subd. 3.

assessment procedure limited to such improvements cannot thus be used in this case. That argument must fail as § 473.521, subd. 3, grants a governmental unit the power to assess in situations in which it was not empowered to assess before. Specifically, such a unit is granted the power to assess "[t]o accomplish any duty imposed on it" by the MWCC. Under c. 429, assessments may well be limited to pay for "improvements" but under § 473.521, subd. 3, they are not so limited. Similarly, Kraemer's argument that there was no "cost" or "expense" to Burnsville to justify the assessment is without merit. Under § 473.521, subd. 3, there need not be a "cost" or "expense," as assessments may be levied in order "[t]o accomplish any duty imposed" by MWCC. Here, the duty imposed is to pay usage and SAC charges. Actually, if these two arguments of Kraemer's were accepted, § 473.521, subd. 3, would have little meaning.

Kraemer also argues that Sewer Project 70-30 is not a "local improvement" and hence cannot be the basis for a special assessment. If this were merely a statutory argument based on c. 429, it would also fall, for § 473.521, subd. 3, must be read as granting local governmental units authority to assess in situations in which they were not empowered to assess before. However, Kraemer's argument is based upon Minn. Const. art. 10, § 1,[4] which provides in part:

"* * * The legislature may authorize municipal corporations to levy and collect assessments for local improvements upon property benefited thereby without regard to cash valuation."

If Sewer Project 70-30 is not a "local improvement," this assessment would violate the constitution and would be illegal notwithstanding Minn. St. 473.521, subd. 3.

Kraemer's argument that Sewer Project 70-30 is not a "local improvement" is based on the fact that the project benefits the entire village. Respondent argues that when the primary purpose

---

[4] Prior to adoption of the 1974 Constitution, the provision was contained in art. 9, § 1.

of a project is to benefit the entire public, the improvement is not local. For this it cites 70 Am. Jur. 2d, Special or Local Assessments, § 20, which states:

"* * * [I]f the primary purpose and effect of the improvement is to benefit the public at large, the improvement is not local although it may incidentally benefit property in a particular locality."

However, that same section continues:

"* * * But if property is enhanced in value by reason of a public improvement, as distinguished from the general benefits to the whole community at large, it is said to be specially benefited and is to be assessed for the special benefits, notwithstanding every other piece of property upon or near the improvement may be to a greater or less degree likewise specially benefited."

This is in accordance with the Minnesota rule that, notwithstanding the fact that the general public may benefit from an improvement, if certain property is specially benefited thereby, the improvement is "local" and the property can be assessed in an amount not exceeding the special benefits conferred.

Thus, in Rogers v. City of St. Paul, 22 Minn. 494 (1876), an assessment was levied upon property benefited by the paving of Third Street. An argument similar to Kraemer's was made, as follows:

"The plaintiffs' counsel contend that, Third street being the principal thoroughfare of the city of St. Paul, the grading, curbing and paving of a portion thereof, as in this instance, were not 'local improvements.' " 22 Minn. 506.

We rejected the argument, referring to Minn. Const. art. 9, § 1:

"From this [section] it follows that the fact that the street to be improved is the most public thoroughfare in the city does not prevent the improvement from being 'local;' but the *local* character of the improvement depends upon the special benefit

which will result to the real property adjoining or near the locality in which the improvement is to be made." 22 Minn. 507.

In State v. District Court of Ramsey County, 33 Minn. 295, 307, 23 N. W. 222, 227 (1885), we expanded on the Rogers rule:

"Under this provision of the constitution it has been the common practice for the legislature to provide in municipal charters for local assessments for street and other improvements of the same general character, and for levying the cost in whole or in part upon property in the vicinity thereof, found specially benefited thereby. Such improvements being public in their nature, it is rare that a case arises where the general public do not share to a greater or less extent in the benefits, though in some cases, as of alleys or lateral streets or sewers, the benefit may seem to be peculiarly local. But it has never been contended that, in authorizing local assessments in pursuance of this constitutional provision, municipal authorities were to be limited to such improvements as are entirely local in their character. The city at large is benefited, and at the same time special benefits in ordinary cases result to the owners of property adjoining or in the vicinity of the improvement. If the special benefits to property so locally affected are equal to the cost of the work, then an amount not exceeding the whole cost may be assessed upon such property; but if the expense thereof exceed such benefits, then the city at large should in any event bear a portion of the burden."

Most recently, in Village of Edina v. Joseph, 264 Minn. 84, 119 N. W. 2d 809 (1962), Edina levied assessments on property abutting France Avenue in order to pay for the improvement of that avenue. France Avenue is a major north-south artery in Edina and southwest Minneapolis, and is an access road to the Southdale Shopping Center. As such, its improvement was calculated to benefit not only Edina but all of the surrounding area. Nevertheless, an assessment levied upon specially benefited property was upheld.

"\* \* \* The assessment in the instant case is limited to .the special benefits found to exist. The fact that there may have been some general benefit from the improvement does not render the final assessment invalid because such general benefit may have been largely ignored. It is presumed that the council will do its duty and assess only to the extent of the special benefits and not for such general benefits as accrue to the public at large." 264 Minn. 92, 119 N. W. 2d 815.

It is clear, therefore, that an assessment is proper even if the general public benefits thereby as long as it is established that "it shall benefit the property on which the cost is assessed in a manner local in its nature, and not enjoyed by property generally in the city." State v. Reis, 38 Minn. 371, 373, 38 N. W. 97, 98 (1888) ; In re Improvement of Lake of the Isles Park, 152 Minn. 29, 188 N. W. 54 (1922). Meeting the requirement that costs be assessed in an amount not exceeding the special benefits conferred establishes the constitutionality of the assessment. See, Mayer v. City of Shakopee, 114 Minn. 80, 130 N. W. 77 (1911).

Thus, Sewer Project 70-30 is a "local improvement" under Minn. Const. art. 10, § 1, if it is shown that it conferred a special benefit on the subject property which it did not confer upon the village as a whole. Whether the improvement confers such a special benefit upon the subject property, in an amount at least equal to the assessment, is not apparent from the court's findings.

In Carlson-Lang Realty Co. v. City of Windom, 307 Minn. 368, 369, 240 N. W. 2d 517, 519 (1976), we fully discussed how special benefit is to be determined, concluding that "[s]pecial benefit is measured by the increase in the market value of the land owing to the improvement." In the case at bar, the trial court made no findings concerning special benefit. It did find:

"The highest and best use of most of petitioner's land is for the purposes it is now used, landfill and a quarry, and said land will not at this time or at any time in the next few years, if ever,

receive any benefit from the interceptor sewer for which it is being assessed."

And in the memorandum accompanying the findings, the trial court said:

"The assessment exceeded the special benefits to the land put to its highest and best use; and the land, in the immediate determinable future, 15 years, received no benefit whatever from the improvement."

But it did not enter any findings on the central issue, to wit: Was the market value of the land increased at all as a result of Sewer Project 70-30? The evidence was in conflict on this point.

Since the central issue is whether or not the market value of the assessed property increased as a result of this improvement, and since no findings were made on this issue, the case must be remanded to the district court for further proceedings. In order to aid in the resolution of this issue upon remand, we make the following observations.

The trial court was troubled by the fact that Burnsville used an old formula for the assessment, a flat $300 per acre on industrial and commercial property. It said:

"The assessment was arbitrary and capricious in that, for example, it (a) was made on a formula adopted by the Village some years ago, namely $300 per acre for land such as this; (b) there is no differentiation made between land near the river in the flood plain restrictive zone, and in the flood plain proper, and land lying within the power easement, and land not so handicapped; (c) there was no differentiation made between land adjacent to the sewer and land a couple miles away. This assessment was done by the mathematical process of multiplying the petitioner's acreage by $300 and has no relation to land benefited, cost of the project, or any other determinable factor than that of acreage times $300.

\* \* \* \* \*

"The court believes that what the Village is trying to do is see that all land therein pays at least $300 per acre for the major sewerage systems, and the only land that hadn't paid up to this time was that in District K, including petitioner's land therein. When the Metropolitan Sewer Board comes on the scene, this is the last chance to achieve this aim, assess for 70TS-8, $300 per acre. The Village is too late."

The difficulty with the reasoning is that the only proper test of the validity of an assessment is whether or not it exceeds the special benefits conferred. It makes no difference when the formula was adopted, or whether or not it differentiates between land located in different areas; if the benefit conferred is at least $300 per acre, the assessment is proper. See, Hartle v. City of Glencoe, 303 Minn. 262, 226 N. W. 2d 914 (1975). The fact other land owners in the city have already paid the $300 per acre over the years bolsters rather than weakens the city's case because of rising costs and because if Kraemer's land was benefited and Kraemer does not pay the same charge, then other users, past or future, will bear its cost.

However, general benefits may result in an increase in market value as well. Thus, perhaps Sewer Project 70-30 caused all market values in Burnsville to rise, for example, $100 per acre, but caused the value of the subject property to rise $1,000 per acre. The special benefit would thus be only $900, even though the market value increased $1,000. See, E. H. Willmus Properties, Inc. v. Village of New Brighton, 293 Minn. 356, 363, note 3, 199 N. W. 2d 435, 439 (1972).

Since the trial court made no findings on any increase in market value, this case is remanded for further proceedings with instructions to determine, by means of the market value test, if any special benefit was conferred. The issue of whether or not Kraemer may recover costs and disbursements is moot.

Reversed and remanded.

MR. JUSTICE PETERSON took no part in the consideration or decision of this case.