In the Matter of PROPOSED LOCKE LAKE PROJECT, FRIDLEY, Minnesota.

No. C5-94-1493.

Court of Appeals of Minnesota.

Feb. 28, 1995.

Review Denied April 27, 1995.

Virgil C. Herrick, Scott M. Lepak, Barna, Guzy & Steffen, Ltd., Coon Rapids, for appellant City of Fridley.

Susan Gaertner, Ramsey County Atty., Deborah M. Juhl, Kristi Swanson Wendorff, Asst. County Attys., St. Paul, for respondent Ramsey County.

Harold H. Sheff, Michelle Ulrich, Minneapolis, for respondent Rice Creek Watershed District.

Matthew B. Seltzer, St. Paul, for amicus curiae Minnesota Bd. of Water and Soil Resources.

Considered and decided by AMUNDSON, P.J., and LANSING and KLAPHAKE, JJ.

## OPINION

KLAPHAKE, Judge.

The Rice Creek Watershed District Board of Managers (managers) approved the Locke Lake improvement project in 1993. Respondent Ramsey County appealed the managers' order to the district court. Appellant City of Fridley challenges the district court's order which in part granted Ramsey County's motion for summary judgment and Ramsey County seeks review of the district court's order which in part granted Fridley's and the managers' motions for summary judgment. We affirm in part, reverse in part and remand.

## FACTS

The managers adopted a water resource management plan (management plan) in 1990, pursuant to the Metropolitan Surface Water Management Act, Minn.Stat. §§ 103B.201–.251 (1990). The management plan included the Locke Lake Improvement Project (the project), a man-made lake in Fridley. The project's goal was to remove accumulated sediment in Locke Lake's east basin. The plan was a five-year capital improvement program which went into effect in October 1990. *See* Minn.Stat. § 103B.205, subd. 3 (1990).

In 1992, the managers sought to amend the project by increasing the estimated cost and authorizing ad valorem funding for the Rice Creek Watershed District (the district). Pursuant to the management plan's amendment procedures, the managers first gave notice of the proposed amendment and held public hearings for comments. In December 1992, the managers resolved to amend the project as proposed. On July 14, 1993, the managers issued findings of fact, conclusions

of law, and an order approving the amendment (managers' order). The amendment increased the cost of the project from $504,-000 to $588,000. The managers also certified the project's cost to the four counties in the district pursuant to Minn.Stat. § 103B.251 (1992). Based upon property values of all taxable property within the district, Ramsey County was assessed $388,734.00, over 66% of the cost, despite having only 27% of the district's land within its borders.

On appeal, the district court granted Ramsey County's summary judgment motion in part, concluding that it had subject matter jurisdiction under the Watershed Act, Minn. Stat. § 103D.535 (1992) and that the managers' failure to follow the amendment procedures for management plans in Minn.Stat. § 103B.231 (1992) invalidated the managers' order. The district court also granted in part the summary judgment motions of Fridley and the managers, concluding that Minn. Stat. § 103B.251, subd. 1 (1992) authorizes the managers to finance the project by district-wide ad valorem taxation.

Fridley appealed summary judgment to this court, arguing that the district court: (1) lacked subject matter jurisdiction; (2) erred in concluding that the management plan's amendment procedures had expired; and (3) erred in reversing the findings and conclusions in the managers' order without limiting its review to the factors set forth in Minn. Stat. § 103B.251, subd. 4 (1992). Ramsey County argues that the district court erred in concluding that district-wide ad valorem funding was proper without an analysis of the corresponding benefits to the assessed property under Minn.Stat. § 103B.251, subd. 3(b) (1992).

## ISSUES

1. Did the district court have subject matter jurisdiction under chapter 103D to review the managers' order which was issued pursuant to chapter 103B?

2. Did the management plan's amendment procedure expire in 1990, invalidating any amendment pursuant to the plan?

3. In reviewing the managers' order, was the district court limited to a consideration of the specific factors listed in Minn.Stat. § 103B.251, subd. 4?

4. Did the metropolitan surface water management statute authorize the funding of a capital improvement project through district-wide ad valorem taxation under Minn. Stat. § 103B.251?

## ANALYSIS

On appeal from summary judgment, this court must determine (1) whether any issues of material fact exist, and (2) whether the trial court erred in its application of the law. *See State by Cooper v. French,* 460 N.W.2d 2, 4 (1990). The evidence must be viewed in the light most favorable to the party against whom judgment was entered. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993) (citing *Abdallah, Inc. v. Martin,* 242 Minn. 416, 424, 65 N.W.2d 641, 646 (1954)).

### I. Subject Matter Jurisdiction

■ Fridley argues that the district court has no jurisdiction to review managers' orders. It asserts that the Board of Water and Soil Resources (BWSR) has exclusive subject matter jurisdiction over appeal of managers' orders under Minn.Stat. § 103B.231, subds. 9, 13 (1992). It is true that chapter 103B's review procedures do not involve the district court. *See* Minn.Stat. §§ 103B.231, subd. 9 (BWSR shall resolve disputes between counties concerning capital improvement plan); 103B.231, subd. 13 (BWSR shall establish procedure for resolving disputes concerning capital improvement plan implementation); 103B.345 (1992) (resolution of disputes by BWSR with right of appeal to court of appeals). Ramsey County, however, appeals the managers' order under Minn.Stat. § 103D.535, subd. 1(a) (1992), which provides:

any party * * * may appeal to the district court or to the board [of water and soil resources] an order of the managers made in a proceeding relating to a project * * * that determines:

(1) the amount of benefits determined;

(2) the amount of damages allowed;

(3) the allowance of fees or expenses in any proceedings;

(4) a matter in the proceeding that affects a substantial right; or

(5) an order of the managers authorizing or refusing to establish a project in whole or in part.

*Id.* Minn.Stat. § 103D.535, subd. 1(b) also limits district court review to projects. We conclude that the district court had jurisdiction to review the managers' order under section 103D.535, subd. 1(a) because the orders: (1) established the project; (2) determined the benefits inuring to property by establishing the scope of the project; and (3) affected a substantial right of Ramsey County taxpayers by certifying the amount of tax to be levied. *See Minnehaha Creek Watershed Dist. v. Gayle's Marina Corp.*, 461 N.W.2d 224, 225 (Minn.1990) (district court can review watershed district permit decisions because section 103D.535 authorizes review of orders from "any proceeding" which "affects a substantial right").

Moreover, our reading of the interplay between chapters 103B and 103D is that 103B governs metropolitan surface and ground water management, whereas 103D is generally applicable to watershed districts. Additionally, the administrative review procedures under 103B are directed at disputes over the detail of capital improvement plans, Minn. Stat. § 103B.231, subd. 9, and the implementation of those plans, Minn.Stat. § 103B.231, subd. 13. At issue here, on the other hand, is whether the law was followed in amending a specific project. Environmental or administrative concerns were not at issue. *Cf. Gayle's Marina*, 461 N.W.2d at 226 (BWSR is "better equipped to act as factfinder in the initial review" of a dock permit decision than the district court). We conclude that the district court properly exercised jurisdiction to review the managers' orders pursuant to section 103D.535, subd. 1(a).

## II. Management Plan Amendment Procedure

Fridley challenges the district court's conclusion that the management plan's amendment procedures had expired before the managers sought to amend the project by increasing the projected cost and authorizing ad valorem funding for the project.

When amending a watershed district management plan, chapter 103B requires managers to submit amendments for review and comment, first to local governmental units within the watershed, then to the metropolitan council, and then to the "commissioners of natural resources, health, and the pollution control agency" for review and comment. Minn.Stat. § 103B.231, subds. 7, 8, 9, 11 (1992). Chapter 103B also authorizes the management plan to establish its own amendment procedures. The management plan here established its own amendment process, including a public hearing, published notice, and notice by mail of the proposed amendment to governmental units affected by the plan. In addition, a person may request the BWSR to review a proposed amendment according to the statutory amendment process of section 103B.231, subds. 7, 8 and 9. No one did. The management plan adopted in 1990 contains the following language: "[t]he plan is intended to extend through the year 1990." Based upon this language, the district court concluded that the management plan's amendment process expired in 1990, before the managers' order amended the project in July 1993. Therefore, the failure to follow the amendment procedure in section 103B.231 invalidated the managers' order.

As a threshold issue, Fridley argues that the district court erred in reviewing the amendment process, because Ramsey County's appeal of the managers' December 1992 resolution to amend the project was untimely. Under chapter 103B, the BWSR could have reviewed the managers' 1992 resolution to amend before the managers' order was made. *See* Minn.Stat. § 103B.231, subd. 13 (persons aggrieved by alleged non-compliance with a management plan may request BWSR review of plan implementation). However, district court review under chapter 103D is predicated upon an order. Any party "may appeal to the district court * * * *an order* of the managers." Minn.Stat. § 103D.535, subd. 1(a) (emphasis added). As the managers' July 14, 1993 order was the first order of the project reviewable by the district court, Ramsey County's challenge of the amendment process was timely.

We conclude that the language of the management plan extending the plan through 1990 was included to comply with chapter 103B's requirement that the management plan "extend through the year 1990 or any year that is evenly divisible by five." *See* Minn.Stat. § 103B.231, subd. 4(a) (1990). A review of the plan clearly shows that it could not have been completed in two months. *See Milbank Mut. Ins. Co. v. Kluver*, 302 Minn. 310, 313, 225 N.W.2d 230, 232 (1974) (prohibits statutory construction creating absurd result). Neither is it logical to conclude that the 1990 date limited amendments under the management plan's procedure for the first two months, then required amendments under the statutory procedure. The provision appears to us to be directory, the violation of which does not invalidate action taken. *See Sullivan v. Credit River Township*, 299 Minn. 170, 176–177, 217 N.W.2d 502, 507 (1974).

The district court also concluded that the management plan's amendment procedure was invalid because it referred to Minn. Stat. § 473.878, a repealed statute, which was amended, recodified, and incorporated into section 103B.231. *See* 1990 Minn.Laws ch. 601, §§ 10–19. The recodification of water law should not "alter the laws affecting water and shall not be construed by a court or other authority, to alter the meaning of the law." 1990 Minn.Laws ch. 391, art. 10, § 1. Because the legislature did not intend the recodification to have any substantive effect, the reference to the repealed statute does not invalidate the management plan's amendment procedure.

There remains, however, a genuine issue of material fact as to whether the management plan's amendment procedure was followed. Deposition testimony of the managers' administrative assistant raises doubt as to whether the managers gave notice of the proposed amendment by mail to the appropriate governmental units. While the managers presented evidence that they gave proper notice and complied with other requirements of the amendment process, the fact issue must be resolved. Therefore, we remand for a determination of whether the managers followed the management plan's amendment procedures.

### III. Scope of the District Court's Review

Fridley also argues that the district court erred because the scope of its analysis went beyond the statutory factors that watershed district managers consider when adopting an improvement project. Minn. Stat. § 103B.251, subd. 4 (1992) requires managers to determine that: (1) the improvement is conducive to public health and promotes general welfare; (2) the improvement complies with the statutes governing metropolitan surface water and ground water management, sections 103B.205–.255; and (3) the plan was adopted pursuant to section 103B.231, defining watershed plans. We disagree. Section 103D.535, under which Ramsey County sought review, does not restrict the district court to a consideration of the factors listed in section 103B.251, subd. 4, nor does Fridley provide authority for this limitation. Moreover, we are not persuaded the district court considered factors beyond the scope of section 103B.251, subd. 4.

### IV. Ad Valorem Taxation

Ramsey County challenges the district court's affirmance of district-wide ad valorem funding for the project. Although Ramsey County has 27% of the district's land within its borders, it was assessed 66% of the cost based on property values. Both Fridley and Ramsey County agree that chapter 103B authorizes ad valorem funding. *See* Minn. Stat. § 103B.241, subd. 1 (1992) ("A levy to pay * * * cost of improvements * * * in an approved and adopted plan shall be in addition to any other taxes authorized by law."). However, Ramsey County argues that because the managers sought funding for the project under section 103B.251, the cost should be apportioned between the four counties according to the benefit each county receives. *See* Minn.Stat. § 103B.251, subd. 3(b) (1992) ("cost[s] must be apportioned by the benefits received by property in the county.").

The district court rejected Ramsey County's argument for apportionment according to the benefit to each county because analysis

of the direct benefit to a particular parcel of property has been applied only to special assessments, not to ad valorem taxation. *See Edward Kraemer & Sons, Inc. v. Village of Burnsville,* 310 Minn. 32, 245 N.W.2d 445, 448 (1976) (direct benefit analyses relevant only for levy of special assessments based upon such benefits, regardless of cash valuation). Furthermore, it would be impractical to require metropolitan watershed districts to apportion costs according to the benefit accruing to each parcel of property before costs could be certified to the counties. Although Ramsey County now argues that the managers must determine the county-wide benefit, rather than benefit to individual parcels, the burden of analyzing a project's particular benefit to each property remains.

■ In construing the requirement that "cost be apportioned according to benefits received by the property in the county," the court must ascertain and effectuate the intent of the legislature. Minn.Stat. § 645.16 (1992). The circumstances under which legislation is enacted may indicate legislative intent. *Id.* Here, the legislature added the apportionment language to section 103B.251, subd. 3(b) in 1986. *See* 1986 Minn.Laws ch. 389, § 4. At the same time, the legislature provided for subwatershed taxing districts where a benefits analysis would help determine which properties should be included in a subwatershed taxing district. *Id.* We conclude, therefore, that the benefits analysis found in Minn.Stat. § 103B.251, subd. 3(b) was intended only for apportioning costs to a subwatershed taxing district. Although this interpretation limits the language in a manner that is not expressly evident, it is consistent with a district's ad valorem funding authority. We affirm the district court's conclusion that the managers were not required to apportion the project costs according to the benefits received by property in each of the four counties in the district.

## DECISION

The district court had subject matter jurisdiction to review the managers' order amending the project pursuant to the Watershed Act, Minn.Stat. § 103D.535, subd. 1(a). Furthermore, the district court did not err in

considering factors other than those listed in section 103B.251, subd. 4 when it reviewed the managers' order to amend the project. The district court did err, however, in applying the statutory amendment procedure instead of the management plan's own process. The district court properly concluded that the Metropolitan Surface Water Management Act authorized the managers to fund an amendment to the project through district-wide taxation under Minn.Stat. § 103B.251, subd. 3(b). There remains a genuine issue of material fact as to whether the managers complied with the management plan's amendment procedure when it amended the project.

**Affirmed in part, reversed in part and remanded.**