# LEONARD MAYER and Others v. CITY OF SHAKOPEE and Others.[1]

February 24, 1911.

Nos. 17,010—(263).

**Local assessments — act constitutional.**

Chapter 312, Laws 1903, which delegates to cities of the fourth class the power to establish sewer districts, is not unconstitutional because it requires that each lot or tract of land within the district shall be assessed for the cost of the improvements, in the ratio of area in square feet to the total assessable area of the district.

**Sewer districts.**

By the provisions of chapter 312, Laws 1903, in establishing sewer districts and sewers therein, the common council is required to exercise its judgment, so as to include within the district such real estate as will be benefited by the improvement, and to apportion the cost thereof on all of the property according to the benefits.

**Action of common council sustained.**

In the establishment of a sewer district and sewers therein by the common council of the city of Shakopee, the evidence is not sufficient to show that the council proceeded upon an illegal principle, applied a wrong rule of law, or acted upon a demonstrable mistake of fact.

Leonard Mayer and each of some fifty others filed separate objections in the office of the city recorder of Shakopee to proposed assessments for the cost of construction of the sewers in district No. 1 of the city of Shakopee, and appealed from the assessments levied by the city council to the district court for Scott county. The appeals were heard together upon stipulated facts by Morrison, J., who made findings and ordered judgment in favor of the city. From the findings, order for judgment and judgment, the objectors appealed. Affirmed.

*Francis Cadwell* and *Julius A. Coller,* for appellants.

*E. Southworth* and *O'Brien, Young & Stone,* for respondents.

[1]Reported in 130 N. W. 77.

[Note] Assessments for sewer improvements, see notes in 60 L.R.A. 227; 26 L.R.A.(N.S.) 973.

Lewis, J.

On September 20, 1909, the common council of the city of Shak-opee, a city of about two thousand inhabitants, passed an ordinance "for the establishment and creation of sewer district No. 1, and for the laying out and construction of certain sewers within the limits of the city of Shakopee." The district was of irregular form, and included the south half of blocks 20, 21, 22, 23, 24, 25, and the north half of blocks 28, 29, 30, 31, 32, and 33 fronting on Second street, which ran from east to west, and the south half of block 30, all of blocks 49 and 52 between Lewis and Holmes streets, the easter-ly two lots in the south half of block 31, the easterly four lots in block 48, the easterly half of the courthouse block, the westerly two lots of the south half of block 29, and the westerly four lots of block 50 and of block 55. The sewer was established, connected with a general sewer at Second and Spencer streets, and was laid along the middle of Second street to Scott street. At right angles to this the sewer was laid on Holmes street, with a stub of one hundred fifty feet to the east on Fourth street. Another branch was laid on Lewis street, at right angles to the Second street line, to Holmes street, with a stub of one hundred eighty feet to the west on Third street. The result was that all lots practically fronted on the sewer, except lots 2 and 3 in blocks 30, lots 2, 3, and 9 in block 49, lots 2, 3, 4, 7, and 8 in block 25, lot 2 in block 29, lots 2 and 6 in block 50 and lots 2 and 9 in block 55. Between each of these lots and the street carrying the sewer one lot sixty feet in width intervened. One lot was one hundred twenty feet distant. The intervening lot lay lengthwise with the sewer street, with the result that, if each of these inside lots were improved independently of the intervening one, the cost of reaching the sewer would be in-creased. The owners of the lots just described and the owners of the lots fronting or bordering on the sewer streets objected to the assessment, on the ground that the law under which the assessment was made was unconstitutional, and that, as made, the improvement was of no benefit to the property.

1. Chapter 312, p. 544, Laws 1903, confers upon the city council of any city of the fourth class the power to maintain a general system

114 M.—6.

of sewers, to create sewer districts, and to change, diminish, or enlarge the boundaries thereof from time to time. General sewers are defined as outlets for districts. "District sewers shall be the designation of all main sewers laid for the immediate draining of a particular sewer district." The cost of constructing general sewers is to be paid out of the general revenue fund, if the sewer fund is not sufficient. There are provisions for joint sewer districts and lateral sewers, designed to connect district sewers with a general sewer or outlet, and "sewer districts shall be, wherever practicable, laid out to include any particular portion of the city which may be drained entirely by itself or which may be first drained by itself and then through connection with a general sewer."

The cost of constructing district sewers is provided for as follows: "The cost of constructing every district sewer may be assessed against all the land in the sewer district subject to assessment for local improvements, without regard to cash valuation, and each lot, piece or parcel of land in the district so subjected to assessment shall be assessed in the ratio of the square feet area to the total assessable area of the whole sewer district."

The constitutionality of this act must be tested by section 1, art. 9, of the constitution as it read in 1903. And we are not concerned with subsequent amendments. Section 1 then provided that the legislature might authorize municipal corporations to levy assessments for local improvements upon the property fronting upon such improvements, or upon the property to be benefited by such improvements, or both, without regard to a cash valuation, and in such manner as the legislature might prescribe. This proviso has been considered and defined so frequently by this court that there is no necessity for going into the subject at length on this occasion.

The amendment of 1869 (Laws 1869, c. 51) was first considered in Rogers v. City of St. Paul, 22 Minn. 494. Local improvements were defined to signify improvements made in a particular locality by which the real property adjoining or near is specially benefited; and the decision of the common council upon the question whether the property was assessed in excess of the benefits was final, unless in case of fraud or mistake. While the legislature might prescribe the limits

of the tax district for a local improvement, it may in its discretion endow some subordinate tribunal to determine upon actual inspection what property will be benefited, and the property so designated is deemed as constituting a tax district. Carpenter v. City of St. Paul, 23 Minn. 232; Cook v. Slocum, 27 Minn. 509, 8 N. W. 755.

The assessment can be made only to the extent of the special benefits, and must be distributed in proportion to the benefits received. The power delegated to a subordinate tribunal to determine these questions calls for an exercise of judgment, and when an arbitrary rule is followed, without regard to proximity, location, or conditions, the assessment is void. State v. District Court of Ramsey County, 29 Minn. 62, 11 N. W. 133; State v. Judges of District Court, 51 Minn. 539, 53 N. W. 800, 55 N. W. 122. In the absence of fraud, it must clearly appear that the assessment was made upon a demonstrable mistake of fact, or upon an illegal principle or erroneous rule of law. State v. District Court of Ramsey County, 68 Minn. 242, 71 N. W. 27; State v. District Court of Ramsey County, 80 Minn. 293, 83 N. W. 183; State v. District Court of Ramsey County, 95 Minn. 70, 103 N. W. 744.

But the constitutionality of the law cannot be successfully assailed by indulging in mere presumptions or suppositions that the apportionment of benefits may be unfairly made. On the contrary, the constitutionality of a law is presumed until something appears to the contrary. Guilder v. Town of Otsego, 20 Minn. 59 (74).

The immediate question, then, is whether the common council was given sufficient freedom to exercise its judgment as to what property was benefited by the improvement and in apportioning the costs according to the benefits. For this purpose sections 2 and 5 must be read together. If it were permissible for the council to lay out a sewer district without regard to the benefits upon the real estate within the district, then the absolute method prescribed for levying the assessment according to area might result in such inequalities as would condemn the assessment, and, so construed, perhaps the act would be invalid. The legislature did not overlook the constitutional requirement. That provision must be read into the act. It was intended that the apportionment of the cost according to area should

be applied to sewers and sewer districts which had been established with reference to the benefits to the property within the district by the completion of the system.

The grant of power to establish sewer districts for the immediate drainage of a particular district means that a district is to be established with reference to the sewer which is to be laid, and that both are to be established with reference to serving the property for which it is desired to furnish sewer facilities. The district may be large or small according to requirements, and the act contemplates that the sewer shall be laid in such manner as will best accomplish the purpose, in the judgment of the council. In the provisions of this act, then, we find ample freedom for the exercise of judgment in the establishment of sewer districts and lines of sewer, so that the absolute method of distributing the cost according to area will not render the assessment invalid.

2. In determining the validity of the proceedings as tested by the principles above reviewed, the question must be considered from the standpoint of the council at the time. The members of that body presumably acquired reliable information as to the lay of the land for drainage purposes, the location of tracts of land to be served with sewer, the manner in which the property was improved, and its adaptability for future improvement. The justice of their decision should not be determined alone by a consideration of the plat. Distance from the sewer was one of the items to consider, but not necessarily the only one. With the exception of two or three instances, according to the evidence, both the outside and inside lots were owned by the same person. If a scheme of improvement had been adopted or was in contemplation to improve the two lots together and front on the sewer streets, then the inner lot would have reasonable privileges in connection with the outer one. We are not prepared to say that this was a matter not proper for the common council to consider. While, according to the plat, lot 3, block 56, was left one hundred twenty feet from the sewer street, and a branch was run from the sewer on Holmes street a distance of one hundred fifty feet east on Fourth street to accommodate other lots

similarly situated, there may have been sufficient reasons, not disclosed by the record, for so doing.

The plan as a whole seems fairly equitable. Some inequalities must always exist in levying assessments and taxes.

Affirmed.