**Ralph C. ANDERSON, Respondent,**

v.

**CITY OF BEMIDJI, Appellant.**

**No. 48740.**

Supreme Court of Minnesota.

July 3, 1980.

Rehearing Denied Sept. 9, 1980.

---

Eugene R. Ouradnik, City Atty., Bemidji, for appellant.

Ekvall & Rasmussen and Edward H. Rasmussen, Bagley, for respondent.

Heard before PETERSON, KELLY, and WAHL, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

Plaintiff, Ralph Anderson, appealed to the district court from a special sanitary sewer assessment imposed on his property by defendant, City of Bemidji. After an evidentiary hearing, the trial court struck down the assessment on the ground that it was not uniform as to Anderson's property as required by Minn.Const. art. 10, § 1, and

ordered the city to recompute the assessment. The city appeals from the order. We reverse.

During 1975 and 1976, the city constructed a sanitary sewer running through the Pine Ridge Addition and generally northwesterly along Highway No. 2, the principal east-west thoroughfare in the city. The route of the sewer is shown on the map reproduced below.

Anderson owns property described as Lots 7 and 8, Block 5, Pine Ridge Addition. Both lots front on 23rd Street to the south, but Lot 8 also has a western frontage on Pine Ridge Avenue; therefore, it abuts the sewer route on two sides. Neither lot has been developed. Lots 5 and 6 of the same block, however, have been subdivided into residential lots fronting on Ash Avenue.

After discussing several alternative methods of apportioning the special assessment for the sewer, the city council decided to assess on a "front-foot basis"; in other words, the assessment to each lot was proportionate to the length of the lot's sewer frontage. The front-foot method was the traditional choice by the city for such improvements as sanitary sewers and street paving. The total cost of the sewer was

$358,000, yielding an assessment of $16.40 per front foot, calculated upon 21,878 assessable front feet.[1]

The council assessed Anderson's Lot 7 on its 157.1-foot, 23rd Street border but decided to assess Lot 8 on its 871-foot, Pine Ridge Avenue border which was the longer of the two sides fronting the sewer. The assessment for Lot 7 was $2,574.80, but the assessment for Lot 8 was $14,284.40. None of the other lots in the area was assessed on its longer side.

Anderson attended all the council meetings at which his assessment was considered and protested the amount of the assessment on Lot 8, arguing that the property was undeveloped and that the 23rd Street frontage should have been used to calculate the assessment for both lots. At the assess-

1. The city assessed an additional amount for the two lift stations built to serve the sewer. These costs were assessed on an area basis and are not challenged in this lawsuit.

ment hearing held November 3, 1976, the council listened to Anderson's objections and then suggested that since the property was undeveloped the council might defer one-half of the assessment for 5 years or until the property was sold. Anderson agreed to the deferral and gave his word that in return he would not challenge the assessment.

The next day, Anderson consulted an attorney and shortly thereafter appealed the assessment in district court. After a hearing, the trial court found the benefits accruing to Anderson from the sewer did exceed the special assessment but found the assessment was not uniform when compared to similar-sized lots in the area.

1. The city contends, initially, that Anderson waived his right to appeal the assessment levied on his property. It is undisputed that Anderson stated at the November 3, 1976, council hearing that he would not appeal the assessment if the council passed a resolution deferring one-half of the assessment for 5 years or until the property is sold. The council passed this resolution and now seeks to hold Anderson to his part of the agreement. Anderson, however, challenges the effectiveness of the agreement on the ground that it was *ultra vires* for the council to defer only one-half of the assessment.

Minn.Stat. § 429.061, subd. 2 (1978), provides:

Except as provided below, all assessments shall be payable in equal annual installments extending over such period, not exceeding 30 years, as the resolution determines, payable on the first Monday in January in each year, but the number of installments need not be uniform for all assessments included in a single assessment roll if a uniform criterion for determining the number of installments is provided by the resolution. *The first installment of each assessment shall be included in the first tax rolls completed after its adoption and shall be payable in the same year as the taxes contained therein; except that the payment of the first installment of any assessment levied upon unimproved property may be deferred until a designated future year, or until the platting of the property or the construction of improvements thereon, upon such terms and conditions and based upon such standards and criteria as may be provided by resolution of the council.* In any event, every assessment the payment of which is so deferred, when it becomes payable, shall be divided into a number of installments such that the last installment thereof will be payable not more than 30 years after the levy of the assessment.

(Emphasis added.)

Anderson argues that since the taxing power of a municipality is derived only from statute, the city has no authority to defer an assessment except as described in § 429.061, subd. 2. The first installment may be deferred, he argues, but not one-half of the assessment.

The city responds that it is authorized to defer assessments as it chooses under § 429.051, which provides:

The cost of any improvement, or any part thereof, may be assessed upon property benefited by the improvement, based upon the benefits received, whether or not the property abuts on the improvement and whether or not any part of the cost of the improvement is paid from the county state-aid highway fund, the municipal state-aid street fund, or the trunk highway fund. The area assessed may be less than but may not exceed the area proposed to be assessed as stated in the notice of hearing on the improvement, except as provided below. The municipality may pay such portion of the cost of the improvement as the council may determine from general ad valorem tax levies or from other revenues or funds of the municipality available for the purpose. The municipality may subsequently reimburse itself for all or any of the portion of the cost of a water, storm sewer, or sanitary sewer improvement so paid by levying additional assessments upon any properties abutting on but not previously assessed for the improvement, on notice

and hearing as provided for the assessments initially made.

It is clear this section does not refer to deferring a portion of the assessment on a parcel within the area originally assessed. Therefore, the question is whether § 429.-061, subd. 2, can be read to imply that if a city may choose to defer an entire assessment, then *a fortiori* it may defer only a portion of the assessment.

 This is a question of first impression, and the parties have cited no case law that is helpful on the subject. While there would seem to be no reason to allow a city to defer collecting the entire assessment on a particular property but not to allow it to collect a portion immediately and to defer the rest, the plain language of the statute precludes the deferral of only one-half of the assessment. The language specifically requires equal annual installments once payment has commenced with the first installment. The time of that first installment may be varied, but once paid, it appears there is no authority to vary the timing of the subsequent annual installments. Therefore, we must conclude the city did not have the authority to defer one-half of Anderson's assessment. Accordingly, his agreement not to appeal in return for the deferral was void and ineffective as a waiver of his right to appeal.

2. The city next contends the trial court erred in finding that the assessment was not uniform as to Anderson's property.[2]

 Article 10, § 1, of the Minnesota Constitution provides that "[t]axes shall be uniform upon the same class of subjects * * * ." In the context of special assessments, this requirement had traditionally been considered in conjunction with the statutory requirement of § 429.051 that spe-

cial assessments be "based upon the benefits received" by the property assessed. In other words, Minnesota law requires that the assessments on the various properties be roughly proportionate to the benefits accruing to each as a result of the improvement. *Village of Edina v. Joseph*, 264 Minn. 84, 97, 119 N.W.2d 809, 818 (1962); *In re Improvement of Third Street*, 185 Minn. 170, 178, 240 N.W. 355, 358–59 (1932); *Mayer v. City of Shakopee*, 114 Minn. 80, 83, 130 N.W. 77, 78 (1911).

Anderson contends that the assessment on his property was so much larger than that on other lots in the area that it did not reflect the proportionate benefits received. It is undisputed that the $14,284.40 assessment on Lot 8 was considerably higher than the assessments on lots of roughly the same size in the area. This is because the other lots fronted on the sewer only along their shorter sides (100 to 160 feet), yielding assessments of up to $3,000.[3] He contends that no other lot in the area was assessed on its longer side and that uniform treatment requires that Lot 8 be assessed along 23rd Street.

The trial court agreed. Stating that the "uniformity issue here relates to the amount of property used to determine the assessment," it compared the assessment on Anderson's Lot 8 to two nearby lots—Lot 1, Block 2, assessed at $2,956.22, and Lot 1, Block 3, assessed at $2,698.49. In both cases the sewer fronted on two sides of the property, but unlike Anderson's Lot 8, only the shorter sides were assessed, even though Lot 1, Block 2, was roughly comparable in size to Anderson's Lot 8. On this basis, the trial court concluded that the rule of uniformity was violated.

---

2. Before reaching this issue, the trial court first concluded that the benefits of the sewer to Anderson's property did exceed the amount of the assessment, thus rejecting Anderson's argument that the assessment constituted a taking of property without just compensation under Minn.Const. art. 1, § 7. This finding has not been challenged by Anderson here.

3. In the case of the lots in Block 2, which were assessed along their Highway No. 2 frontage, there was the additional condition that if the lots were developed along Cedar Street to the north, an additional connection fee equal to the initial assessment would be charged. Even so, Anderson argues, the maximum total assessment for these lots would be approximately $6,000, far less than the $14,000 assessed Anderson's lot.

The trial court, however, failed to consider the comparative benefits accruing to the various lots. Instead, it treated the issue simply as one of comparative size and ignored the testimony of the city's witnesses, who distinguished Anderson's property from the other lots and explained why the benefits accruing to Lot 8 were related to the sewer's route on the longer side of the lot.

The city's expert witnesses testified that the highest and best use for Lot 8 was to subdivide it along Pine Ridge Avenue, that is, on its longer side. Each subdivided lot would then front on the sewer. If other lots in the same block were subdivided in this fashion (for example, Lots 3 and 4), the upper lots would not front on the sewer. Anderson's attorney attempted to elicit on cross-examination an admission that only access to the sewer mattered, but the city's witnesses stated access was only one consideration and expressed the opinion that the length of the frontage in Anderson's case was in fact related to the benefits derived. The city's witnesses distinguished Lot 1, Block 3, as one which, unlike Anderson's lot, was not appropriate for subdivision. Lot 1, Block 2, was distinguished because the most likely development would be along Highway No. 2 to the south and Cedar Street to the North.[4] Thus, the benefits accruing to those lots came only on the shorter sides, the sides assessed. Anderson's witnesses made no attempt to rebut these distinctions; in fact, they made no reference whatsoever to comparative benefits on other properties but spoke only to the issue of whether the benefits to Anderson were equal to the assessment, an issue the trial court resolved in the city's favor.

Furthermore, contrary to the assertion that every other lot in Block 5 was assessed on its shorter, 23rd Street frontage, we note that the subdivided residential parcels of Lots 5 and 6 were assessed along the sewer's route on Ash Avenue. Thus, Lots 5 and 6 actually were assessed on their longer sides, just as Lot 8 was assessed on its longer side. The only difference was that Lots 5 and 6 were owned by a number of persons rather than by one. Donald Dougherty, the city manager, testified that one basis for his conclusion that Lot 8 would be subdivided along Pine Ridge Avenue was its similarity to the subdivided lots fronting on Ash Avenue.

Anderson responds that the city could not speculate about his future use of the property. He suggests that he might have wished to sell to a single buyer for a business fronting on Highway No. 2 rather than to subdivide along Pine Ridge Avenue. In that event, he argues, the long sewer frontage on Pine Ridge Avenue would be of no added benefit to him. It is well established, however, that the relative benefits from an improvement are calculated on the market value of the land before and after the improvement and that the market value may be calculated on the highest and best use of the land. Even present use, while a consideration, is not dispositive. *Louisville & N. R. R. Co. v. Barber Asphalt Paving Co.*, 197 U.S. 430, 435 (1905); *American Oil Co. v. City of St. Cloud*, 295 Minn. 428, 432–35, 206 N.W.2d 31, 34–36 (1973); *Village of Edina v. Joseph*, 264 Minn. 84, 95, 99, 119 N.W.2d 809, 817, 819 (1962); *In re Improvement of Superior Street, Duluth*, 172 Minn. 554, 560, 216 N.W. 318, 320 (1927). The city's witnesses testified that the highest and best use for Anderson's property was development along Pine Ridge Avenue and that the Highway No. 2 frontage, while a definite asset to the property, did not necessarily make development along the highway the most advantageous alternative. In fact, it was stated that such development would be a wasteful use of the property. Furthermore, Anderson offered no testimony about future plans for the property and no evidence from his own appraiser disputing the opinion of the city's witnesses about optimum development.

We have held on numerous occasions that once it has been found that the assessment does not exceed the benefits to the proper-

---

4. Unlike Anderson's property, Lot 1, Block 2, would probably not be developed along Pine

Ridge Avenue because the platted avenue has been vacated north of Highway No. 2.

ty, the apportionment of assessment among the various properties is a legislative function on the part of the council and will not be overturned except on a showing that it was clearly erroneous.

[I]t is not the province of the court to substitute its judgment for that of the body making such a decision, but merely to determine whether that body was within its jurisdiction, was not mistaken as to the applicable law, and did not act arbitrarily, oppressively, or unreasonably, and to determine whether the evidence could reasonably support or justify the determination.

*Village of Edina v. Joseph*, 264 Minn. at 93, 119 N.W.2d at 815; *see also Hartle v. City of Glencoe*, 303 Minn. 262, 266, 226 N.W.2d 914, 918 (1975); *Mayer v. City of Shakopee*, 114 Minn. at 83, 130 N.W. at 78. And, in *Qvale v. City of Willmar*, 223 Minn. 51, 55, 25 N.W.2d 699, 702 (1946), we said:

The apportionment of taxes and assessments is a legislative function. If the question of benefits is a matter upon which reasonable men may differ, the determination by the taxing officers must be sustained.

*Accord, Quality Homes, Inc. v. Village of New Brighton*, 289 Minn. 274, 285, 183 N.W.2d 555, 562 (1971).[5]

Thus, the question on review is whether the trial court could reasonably conclude from the evidence that the city officials could *not* reasonably conclude that the assessment on the longer side of Anderson's property was disproportionate to the benefits received, as compared with other lots.

Anderson does not contend that the front-foot method generally violates the re-

quirement that assessments be in proportion to benefits. We have held on several occasions that city officials may reasonably conclude this method meets the constitutional and statutory requirements, particularly in cases of street and sewer improvements. *Continental Sales & Equipment Co. v. Town of Stuntz*, 257 N.W.2d 546, 550 (Minn.1977); *Village of Edina v. Joseph*, 264 Minn. at 97, 119 N.W.2d at 818; *Qvale v. City of Willmar*, 223 Minn. at 58, 25 N.W.2d at 704; *State ex rel. Oliver Iron Mining Co. v. City of Ely*, 129 Minn. 40, 47–50, 151 N.W. 545, 547–48 (1915).

Anderson contends, however, that in this case the choice to assess his property on the longer side violated the requirement of uniformity. Given the testimony described above, we conclude the trial court was not justified in finding against the city. The testimony of the city's witnesses as to comparative benefits, largely, if not totally, unrefuted by Anderson's witnesses, gave valid reasons for the decision of the council to assess Anderson's property in that manner, and it was evident the issues had been carefully considered by the officials before they made their decision. At the very least, reasonable minds could differ on the question whether the assessment was proper. Therefore, the finding that the assessment was not uniform cannot be upheld. The order directing the city to recalculate the assessment on Anderson's property is accordingly reversed.

Reversed.

TODD, J., took no part in the consideration or decision of this case.

---

5. This scope of review is in contrast to the scope of review on the issue whether the assessment exceeded the benefits and resulted in a taking without compensation. As to that constitutional issue, the trial court's review of the council's decision is a de novo review, without the deference accorded under the clearly erroneous standard. There is a presumption of validity of the assessment, but if it is rebutted by the taxpayer, the presumption disappears and the court makes a factual determination as it would in any case. We would overturn the findings only if they were not reasonably sup-

ported by the record. *See, e. g., E. H. Willmus Properties, Inc. v. Village of New Brighton*, 293 Minn. 356, 199 N.W.2d 435 (1972); *Village of Vadnais Heights v. Board of Water Commissioners*, 306 Minn. 234, 236 N.W.2d 777 (1975). On the other hand, where, as in the case at bar, the issue is the policy decision of the manner of apportioning the assessments, the trial court may overturn the council's determination only when the council's conclusions are clearly erroneous. We clarified this distinction in *Buettner v. City of St. Cloud*, 277 N.W.2d 199 (Minn. 1979).