**Gerald W. LUNDERBERG, et al., Appellants,**

**Donald R. Wolfe, et al., Defendants,**

v.

**CITY OF ST. PETER, Respondent.**

No. C5–86–850.

Court of Appeals of Minnesota.

Dec. 23, 1986.

Review Granted Feb. 18, 1987.

G. Barry Anderson, Arnold & McDowell, Minneapolis, for appellants.

Greggory J. Woods, Asst. City Atty., St. Peter, for respondent.

Heard, considered and decided by POPOVICH, C.J., WOZNIAK and FORSBERG, JJ.

## OPINION

POPOVICH, Chief Judge.

This appeal is from a judgment of remand following an assessment to property owners for sewer service line improvement constructed by the City of St. Peter, Minnesota. The trial court ordered reassessment based on a per foot calculation rather than a per service charge. Appellants claim the trial court erred in ordering reassessment because the reassessment is not formulated on market value increase and exceeds special benefits received. We reverse and reinstate the city's original assessment.

### FACTS

Pursuant to a 1971 stipulation agreement with the Minnesota Pollution Control Agency and to comply with the municipal code, respondent City of St. Peter began a series of sewer improvement projects. The final step to complete the work began in 1983 when separation of storm drains from sanitary sewers was planned for the central business district underlying South Minnesota Street along which appellants Lunderbergs', Nemesis', Maynards' and Wolfe's properties are located.

The sewer project involved two parts: (1) replacement of the main sanitary sewer line running underneath South Minnesota Avenue, and (2) replacement of over 60–year-old clay service lines running from the main sanitary sewer line to each individual property owner.

Total estimated cost of the project was $2.5 million. Respondent planned to fund the work at overall city expense with grant assistance from state and federal sources, except individual abutting property owners would bear the cost to inspect, repair and replace the service lines by special assessment. These service costs amounted to $256,056 and were necessarily incurred with respect to each service unless the line was abandoned and sanitary sewer service terminated. Thus, two options were available regarding each service line involved: either discontinue service by plugging the line against further usage or excavate, inspect, and replace as necessary.

In August 1983, approximately two dozen business and building owners attended a meeting where respondent made a presentation regarding the condition of the service lines and offered alternatives of discontinuance or replacement. Since the exact length of each service line could not be determined prior to the commencement of the improvements, the property owners indicated they would prefer all assessments be equal for each service connection.

Respondent assessed the per service charge to abutting properties by dividing the number of service lines involved into the total cost of replacement. Appellants Lunderberg and Wolfe were assessed a full service line charge of $9144.85. Appellants Nemesi and Maynard were each assessed a shared service line charge of $4572.52.

On January 23, 1984, the city council held a required assessment hearing pursuant to Minn.Stat. ch. 429 and the assessment roll was adopted. Of the 28 property owners affected, one property owner elected to discontinue sanitary sewer service. In February 1984, respondent began construction of the remaining 27 service connections. Appellants Lunderberg, Nemesi, Maynard and Wolfe appealed their assessment to district court. Wolfe did not join in the appeal to this court.

On April 16 and 17, 1985, a hearing was held. Both parties called experts who testified regarding property valuations before and after service line replacement.

Appellants' appraiser, James Robinson, testified he based his calculations on a before and after market study of the properties. Robinson indicated the full cost of underground improvements is frequently not recovered by a landowner on resale and noted a static downtown St. Peter economy.

Respondent's appraiser, Owen Viker, testified he arrived at the before replacement market valuation by subtracting the cost to cure the defective service lines from an after replacement market valuation. Viker's cost-to-cure calculation represents the market value added by the necessary sewer replacement. On cross-examination, Robinson agreed with Viker's approach if in fact the improvements were necessary. The experts' valuations compare as follows:

| | Robinson | | | Viker | | |
|---|---|---|---|---|---|---|
| | Market Value Before Replacement | Market Value After Replacement | Value of Benefit | Market Value Before Replacement | Market Value After Replacement | Value of Benefit |
| Lunderberg | 15,000 | 18,000 | 3000 | 1,400 | 23,000 | 21,600 |
| Nemesi | 37,500 | 38,500 | 1000 | 33,500 | 40,000 | 6,500 |
| Maynard | 36,500 | 37,500 | 1000 | 30,300 | 37,000 | 6,700 |
| Wolfe | 31,000 | 32,000 | 1000 | 31,100 | 35,000 | 3,900 |

Appellants testified they did not feel the market value of their property increased beyond the benefit value calculated by Robinson. The buildings involved are older frame constructed buildings, approximately 100 to 110 years old.

The trial court agreed with respondent's assessment rationale based on the cost to cure service line defects. The court concluded:

The cost of keeping a sewer service line functional in compliance with legal requirements against pollution of surface and subsurface waters affects the fair market value of the property requiring sewer service. If, because defects in the sewer service violate pollution rules, the repairs are necessary for legal use, the fair market value of the property served is diminished, at least, by the reasonable cost of necessary repairs.

Appellants' failure to request cutoff of the lateral sewer service lines serving their respective properties implicitly determined that sewer service to each of those properties is a significant component of the value of the properties served.

The court also noted "each property owner ends up with a sewer line reconstructed with more durable materials * * * significant aspects of value contributed to each of Appellants' property by what was done." The court further found:

[C]ost to replace the service lines after the project was complete would approximate twice the cost to do so while the overall work progressed, and that the cost could be handled at a lower interest rate as a public improvement than if privately and individually financed * * *.

The court disagreed, however, with respondent's "per service" assessment charge. The court found during the planning it was assumed that each service line approximated 65 feet in length. When the work was actually done, it was found the length of appellants' lines varied. Lunderbergs' line is 104 feet; Nemesis' line 65 feet; Maynards' line 67 feet; and Wolfe's line only 20 feet. The court concluded:

Cost per service to do the work varied according to conditions and is better approximated by pro rating total cost among service lines repaired according to length of each line. Because City's assessment did not identify and correlate to cost variations by length among the several lines of the Appellants, it arbitrarily, capriciously and unfairly impacted upon them and is therefore invalid.

The court ordered reassessment based upon "individual footage cost computed by dividing total service line footage excavated and repaired, as determined during the work, into the contract price and associated cost for the service line portion of the project." Respondent's engineer calculated the amounts using a $146.59 per foot charge which compares with the original assessment as follows:

| | Original | Recalculation |
| --- | --- | --- |
| Lunderberg | $9144.85 | $15,832.00 |
| Nemesi | 4572.52 | 4,764.00 |
| Maynard | 4572.52 | 4,910.50 |
| Wolfe | 9144.85 | 2,859.00 |

Respondent, however, did not hold a reassessment hearing pursuant to Minn. Stat. § 429.071, subd. 2. The parties sought to avoid a second trial and potential appeal and appealed to this court from the February 21, 1986 judgment for remand. Thus, the subsequent recalculations are not part of the record on appeal.

In appellant's brief and at oral argument, appellants conceded the necessity for replacement of their service lines. In addition, the parties stipulated there is no procedural defect affecting the posture of the parties, either in the assessment process followed by respondent or the appeal taken by appellants.

## ISSUE

Was the trial court's order of remand to reassess on a per foot calculation proper?

## ANALYSIS

1. The standard for this court in reviewing a district court's determination of a special assessment is stated in *Carlson-*

*Lang Realty Co. v. City of Windom,* 307 Minn. 368, 373, 240 N.W.2d 517, 521 (1976):

> The scope of our review is a careful examination of the record to ascertain whether the evidence as a whole fairly supports the findings of the district court and whether these in turn support its conclusions of law and judgment.

*Id.*

The district court's scope for reviewing a city's asessment is defined in *Buettner v. City of St. Cloud,* 277 N.W.2d 199 (Minn. 1979). In *Buettner,* the Minnesota Supreme Court held a special assessment which exceeds the benefit to the property is a taking under the Fourteenth Amendment:

> [I]n a case such as this, where the sole issue presented is whether there has been an unconstitutional taking, the trial court cannot abrogate its duty to uphold constitutional safeguards and defer to the judgment of the taxing authority. Decision must be based upon independent consideration of all the evidence. * * * There is no need for a court in such a position to depend upon prior administrative determinations to carry out its constitutional responsibility.

*Id.* at 203; *Anderson v. City of Bemidji,* 295 N.W.2d 555, 561 n. 5 (Minn.1980); *see Lydon v. City of North St. Paul,* 355 N.W.2d 205, 206 (Minn.Ct.App.1984).

 Limitations on a city's power of special assessment are:

> (a) The land must receive a special benefit from the improvement being constructed,
>
> (b) The assessment must be uniform upon the same class of property, and
>
> (c) The assessment may not exceed the special benefit.

*Carlson-Lang Realty Co.,* 307 Minn. at 369, 240 N.W.2d at 519. Similarly, Minn. Stat. § 429.051 (1984) provides the cost of any improvement "may be assessed upon property benefited by the improvement, based upon the benefits received." *Id.*

> To determine the value of a special benefit, the taxing authority must consider "what increase, if any, there has been in

the fair market value of the benefitted land."

*Nyquist v. Town of Center,* 312 Minn. 266, 269, 251 N.W.2d 695, 697 (1977) (quoting *City of St. Louis Park v. Engell,* 283 Minn. 309, 316, 168 N.W.2d 3, 8 (1969)), *overruled on other grounds, Downtown Development Project v. City of Marshall,* 281 N.W.2d 161, 163 n. 3 (Minn.1979). This difference in market value should be computed by determining:

> what a willing buyer would pay a willing seller for the property before, and then after, the improvement has been constructed. * * * If the assessment is set higher than the special benefit conferred, it is a taking without compensation to the extent of the excess.

*Carlson-Lang Realty Co.,* 307 Minn. at 369–70, 240 N.W.2d at 519; *see Tri-State Land Company v. City of Shoreview,* 290 N.W.2d 775, 777 (Minn.1980); *Nyquist,* 312 Minn. at 269, 251 N.W.2d at 697.

Appellants specifically argue the evidence shows the market value increase does not coincide with the cost to cure the defective lines. Appellants now admit, however, replacement is not discretionary but necessary.

 We agree with the trial court's finding replacement cost necessary for continued legal use impacts the market value accordingly. Further, "the market value may be calculated on the highest and best use of the land." *Anderson,* 295 N.W.2d at 560; *Village of Edina v. Joseph,* 264 Minn. 84, 99, 119 N.W.2d 809, 819 (1962) (value enhanced for any purpose). The present use of the property is not controlling. *Id.*

 The trial court properly found special benefits but improperly ordered reassessment based on a per foot calculation. The record supports the city's original per service unit charge based on the specific facts involved here. At the August 1983 meeting, property owners agreed to the per service unit charge. Appellants opted to continue sanitary sewer use and all received like service. The trial court erred in

finding respondent's original assessment arbitrarily, capriciously, and unfairly impacted upon appellants. Accordingly, we reverse and reinstate the city's original assessment.

## DECISION

Because appellants elected to continue sanitary sewer service and replacement of defective service lines was necessary for continued use, the trial court properly found special benefits equal the cost of replacement. The evidence does not support the court's order for reassessment based on a per foot calculation. We reinstate the city's original assessment based on a per service unit charge for these necessary service line connections.

Reversed.