# STATE OF MICHIGAN

# COURT OF APPEALS

GARY R. HUND,

       Plaintiff/Cross-Defendant-Appellee,

v

NATALIE T. HUND,

       Defendant/Cross-Plaintiff-
Appellant.

UNPUBLISHED
July 6, 2017

No. 334313
Livingston Circuit Court
LC No. 12-047005-DM

Before: GADOLA, P.J., and JANSEN and SAAD, JJ.

GADOLA, P.J. (*dissenting*).

I respectfully dissent. In my opinion, defendant proved by a preponderance of the evidence that a change of domicile was warranted under the factors in MCL 722.31(4) of the Child Custody Act, MCL 722.21 *et seq.*, and the trial court's finding that defendant's proposed move did not have the capacity to improve the child's life went against the great weight of the evidence. I further believe that the trial court abused its discretion by granting plaintiff's motion to change the child's custody.[1]

---

[1] Under MCL 722.28, in all child custody actions, "orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of the evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." This Court reviews for an abuse of discretion a trial court's decision on a motion to change domicile or custody. *Sulaica v Rometty*, 308 Mich App 568, 577; 866 NW2d 838 (2014). In the child custody context, questions of law are reviewed for clear legal error. *Id.* "A trial court commits legal error when it incorrectly chooses, interprets, or applies the law." *Id.* A trial court's factual findings are reviewed under the great weight of the evidence standard. *Rains v Rains*, 301 Mich App 313, 324; 836 NW2d 709 (2013). "This Court may not substitute [its] judgment on questions of fact unless the facts clearly preponderate in the opposite direction. However, where a trial court's findings of fact may have been influenced by an incorrect view of the law, our review is not limited to clear error." *Id.* at 324-325 (quotation marks and citations omitted).

## I. DEFENDANT'S MOTION FOR CHANGE OF DOMICILE

As a preliminary matter, in my opinion, defendant's proposed move to Sarnia, Ontario should not have triggered the application of MCL 722.31. MCL 722.31(1) states the following:

> Except as otherwise provided in this section, a parent of a child whose custody is governed by court order shall not change a legal residence of the child to a location that is more than 100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued.

At the time the parties commenced the instant action, the child's legal residence was located at 4837 Mercer Road in Pinckney, Michigan. Defendant sought to relocate to Sarnia, Ontario, stating in her motion to change domicile that her new residence was 5.6 miles across the bridge and approximately 106 miles from the Pinckney residence. Although there are easily more than 100 *road* miles between the Pinckney residence and Sarnia, Ontario, for purposes of assessing the applicability of MCL 722.31 distance is measured by *radial* miles. *Bowers v VanderMeulen-Bowers*, 278 Mich App 287, 294; 750 NW2d 597 (2008). The radial distance from the Pinckney residence to the furthest outer edge of Sarnia, well beyond 5.6 miles past the bridge, is only approximately 90 miles. See *People v Perry*, 232 Mich 433, 442; 205 NW 151 (1925) ("Courts may take judicial notice of political boundaries, such as counties, cities, and townships."); *McCroskey v Gene Deming Motor Sales, Inc*, 94 Mich App 309, 311; 288 NW2d 418 (1979) (noting that courts may take judicial notice of the distance between locations).

In *Gagnon v Glowacki*, 295 Mich App 557, 566; 295 NW2d 557 (2012), this Court explained that, "[o]n its face, MCL 722.31 is only applicable when a parent attempts to change the domicile of a child to a location *that is over 100 miles away*." (Emphasis added.) However, relying on *Mogle v Scriver*, 241 Mich App 192, 202-203; 614 NW2d 696 (2000), the *Gagnon* Court nonetheless concluded that "when a child's custody is governed by a court order that prohibits the child from moving to another state without the permission of the court . . . regardless of the distance involved if the proposed residence change involves leaving the state, then the factors under MCR 722.31(4) are the proper criteria for the court to consider." *Gagnon*, 295 Mich App at 566. In this case, the child's custody was governed by a court order that prohibited moving the child from the state without the permission of the court, so admittedly, the holding from *Gagnon*, 295 Mich App at 566, applies.

It is noteworthy, however, that the holding in *Gagnon* relies on *Mogle*, which was decided before the Michigan Legislature enacted MCL 722.31 by way of 2000 PA 422, effective January 9, 2001. In *Mogle*, 241 Mich App at 202-203, 203 n 2, this Court held that, "[i]n determining whether to grant a request to change a child's state of domicile, a trial court must consider" the *D'Onofrio*[2] factors. In *Spires v Bergman*, 276 Mich App 432, 437; 741 NW2d 523 (2007), this Court noted that, before the enactment of MCL 722.31, "the *D'Onofrio* factors were used to determine whether the relocating parent should be allowed to change a child's domicile."

---

[2] *D'Onofrio v D'Onofrio*, 144 NJ Super 200, 206-207; 365 A2d 27 (1976).

When the Legislature enacted MCL 722.31, however, it codified the circumstances in which the factors apply. *Spires*, 276 Mich App at 438. The *Spires* Court explained:

It is well settled that the Michigan Legislature has the power to change or modify the common law.[3] The Legislature is presumed to be aware of the common law when it acts, and statutes must be interpreted in conformance with their express terms even if they conflict with the common law. [*Id.* (citations omitted).]

The *Spires* Court thus held that "[u]se of the *D'onofrio* factors in change-of-domicile cases is now exclusively controlled by MCL 722.31[.]" *Id.*; see also *Brecht v Hendry*, 297 Mich App 732, 742; 825 NW2d 110 (2012) (explaining that, under the decision in *Spires*, although a parent "must still seek the trial court's permission under MCL 3.211(C)(1)[4] before moving a child subject to a custody order out of this state, if MCL 722.31 does not apply, the trial court has no obligation to consider the *D'Onofrio* factors").

As this Court noted in *Gagnon*, 295 Mich App at 566, "[o]n its face, MCL 722.31 is only applicable when a parent attempts to change the domicile of a child to a location *that is over 100 miles away*." (Emphasis added.) In my opinion, the plain language of MCL 722.31 supersedes the common-law application of the *D'Onofrio* factors and only applies in cases in which a relocating parent seeks to move more than 100 miles away, regardless of whether the proposed move would bring the child beyond state borders.[5] Were I not constrained by this Court's

---

[3] In *Brecht v Hendry*, 297 Mich App 732, 739; 825 NW2d 110 (2012), this Court clarified that "under the common law applicable to requests for a change in domicile under MCR 3.211(C)(1), a parent with sole or joint custody could not change the domicile of a child to a location outside this state without obtaining the trial court's permission and the trial court had to make its decision after considering the *D'Onofrio* factors . . . ."

[4] MCR 3.211(C)(1) provides that "[a] judgment or order awarding custody of a minor must provide that . . . the domicile or residence of the minor may not be moved from Michigan without the approval of the judge who awarded custody or the judge's successor."

[5] Although legislative analysis has little value as a tool of statutory interpretation, it may provide helpful background context. See *Brecht*, 297 Mich App at 740 n 1. In its analysis of 2000 PA 422, the Senate Fiscal Agency explained that, under then-existing law,

[a] court order typically will prevent the custodial parent from relocating across state lines without the other parent's consent or the approval of the court. This restriction reportedly is often applied without regard to the distance from a proposed new residence to the child's current home or to a noncustodial parent who may have parenting time rights; movement within Michigan might be unencumbered, however. For instance, a parent who lived in Monroe, Michigan, could be prevented from moving 15 miles or so to Toledo, Ohio, without court approval or consent from the other parent, but could move 620 miles to Ironwood, Michigan. [Senate Legislative Analysis, SB 1244, June 23, 2000.]

holding in *Gagnon*, see MCR 7.215(C)(2), (J)(1), I would thus hold that defendant should not have been subject to an inquiry under MCL 722.31. Reviewing the factors in MCL 722.31(4), however, I nonetheless conclude that the trial court's findings regarding the statutory change-of-domicile factors went against the great weight of the evidence.

MCL 722.31(4) states the following:

Before permitting a legal residence change otherwise restricted by subsection (1), the court shall consider each of the following factors, with the child as the primary focus in the court's deliberations:

(a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.

(b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.

(c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.

(d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.

(e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

"The moving party has the burden of establishing by a preponderance of the evidence that the change in domicile is warranted." *Mogle*, 241 Mich App at 203. If a parent sufficiently establishes the change-of-domicile factors in MCL 722.31(4), the trial court must then determine whether the modified residence would change the child's established custodial environment. *Brown v Loveman*, 260 Mich App 576, 598 n 7; 680 NW2d 432 (2004). If relocation would

---

Accordingly, in the context in which the Legislature enacted 2000 PA 422, jurisdictional boundaries, as opposed to geographic distance between locations, had dictated the scope of judicial oversight applicable to a parent's request to change domicile. With the enactment of 2000 PA 422 the Legislature appears to have made distance, rather than the fact a proposed change in domicile does or does not involve a move across state boundaries, the determining factor in whether to apply the factors contained in MCL 722.31(4).

"result in a change in parenting time so great as to necessarily change the established custodial environment," the court must inquire into the best-interest factors in MCL 722.23. *Id.* at 594-595, 598 n 7. The moving party must then prove by clear and convincing evidence that the change of domicile is in the child's best interests. *Id.*

With regard to factor (a), I agree with the majority that MCL 722.31 does not require courts to consider only the immediate circumstances at the time a parent files a motion to change domicile because the statute is concerned with capacities and potentials. I disagree, however, that the evidence did not clearly show that defendant's proposed move to Sarnia had the capacity to improve the child's life. It is well established that an "increase in income that will elevate the quality of life of the relocating parent and child supports a finding that a party has met its burden of proof" under MCL 722.31(4)(a). *Brown*, 260 Mich App at 601. Tiernay testified that he was a mechanical engineer, and defendant explained that Tiernay made enough money that she would not need to work. The majority asserts that defendant did not demonstrate an "increased earning potential" in Sarnia because the evidence showed that she either would not work, given Tiernay's income, or, if she did work, she would perform the same kind of work she performed in Michigan. This analysis improperly ignores that the income of a relocating parent's spouse and a relocating parent's ability to stay home because of a spouse's income are both beneficial considerations when assessing whether a move has the capacity to improve a child's life. See *Mogle*, 241 Mich App at 204-205 (affirming a trial court's determination that a move had the capacity to improve the life of a child where the mother petitioned for a change of domicile on the basis of her new husband's assignment to an Air Force base in Virginia and explained that she would assume the role of a stay-at-home mother).

The majority suggests that defendant could benefit from Tiernay's income while living in Michigan and that her remarriage was not a positive consideration because the child had only known Tiernay for a few months. This Court has held, however, that when a "traditional, nuclear" family is an option, living with that family unit may provide a more permanent and stable solution than a single parent can offer. *Id.* at 199-200. It is unreasonable, in my opinion, to conclude that defendant's son would enjoy greater stability by residing with defendant just inside the border of Michigan while his step-family lived in a different home only a short distance away. Further, the majority's conclusion that defendant could fully benefit from Tiernay's income even if she lived in Michigan ignores the practical reality that defendant and Tiernay would be required to establish and maintain two households.

The majority opinion also overlooks that defendant's proposed move would bring the child closer to extended family, including the child's maternal grandparents, several aunts, and cousins. See *Ritterhaus v Ritterhaus*, 273 Mich App 462, 466-467; 730 NW2d 262 (2007) (explaining that the presence of extended family should be considered when evaluating the quality of a child's life). Tiernay also testified that he lived in a five-bedroom home in a well-off neighborhood near nature trails and parks. Defendant testified that the child had a close relationship with his step-family, explaining that he and his step-brother wanted to share a room because "[t]hey liked to be together." The record reveals that the child would have access to high quality education and extracurricular activities, such as gymnastics, soccer, swimming, hockey, and figure skating, in Sarnia. Considering this evidence, the trial court's finding that defendant's proposed move did not have the capacity to improve the child's life was against the great weight of the evidence.

I agree with the majority that the trial court found that factors (b), (d), and (e) were neutral, and that the factual findings underlying these factors were not against the great weight of the evidence. Further, although the trial court stated at the hearing on defendant's objections to the referee's recommendation that factor (c) "does weigh against granting the motion," the court did not explain why this factor weighed *against* changing the child's domicile. The referee's recommendation stated only that factor (c) "does not weigh in favor of a change of domicile," and the trial court affirmed this recommendation by written order. See *In re Contempt of Henry*, 282 Mich App 656, 679; 765 NW2d 44 (2009) ("[A] court speaks through its written orders and judgments, not through its oral pronouncements."). All things considered, it appears that the trial court found that all of the change-of-domicile factors other than MCL 722.31(4)(a) were neutral, and, in my opinion, these findings were not against the great weight of the evidence. Nonetheless, because the evidence clearly favored defendant's proposed move with regard to factor (a), I would conclude that defendant established by a preponderance of the evidence that a change of domicile was warranted. Accordingly, I would remand the case for a determination of whether the proposed relocation would "result in a change in parenting time so great as to necessarily change the established custodial environment," and if it would, a determination of whether clear and convincing evidence demonstrated that the change of domicile was in the child's best interests. *Brown*, 260 Mich App at 594-595, 598 n 7.

## II. PLAINTIFF'S MOTION TO CHANGE CUSTODY

I further believe that the trial court abused its discretion by granting plaintiff sole physical custody of the child. Under the Child Custody Act, a party moving to modify an existing child custody order must first establish proper cause or a change of circumstances before the trial court may reopen the custody matter and hold a hearing to assess whether the proposed modification is in a child's best interests. *Lieberman v Orr*, ___ Mich App ___, ___; ___ NW2d ___ (2017) (Docket No. 333816); slip op at 7, citing MCL 722.27(1)(c).[6] When a parent seeks to modify custody, *Vodvarka v Grasmeyer*, 259 Mich App 499, 509-514; 675 NW2d 847 (2003), provides the standard required to show proper cause or a change of circumstances. *Lieberman*, ___ Mich App at ___; slip op at 7. Under *Vodvarka*, a moving party demonstrates a change of circumstances if he or she proves by a preponderance of the evidence that "since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a significant effect on the child's well-being, have materially changed." *Vodvarka*, 259 Mich App at 513. "[T]he evidence must demonstrate something more than the normal life changes (both good and bad) that occur during the life of a child, and there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child." *Id.* at 513-514. To establish proper cause, a moving party must prove by a preponderance of the evidence that an appropriate ground for legal action exists, that the ground is "relevant to at least one of

---

[6] MCL 722.27(1)(c) states, "If a child custody dispute has been submitted to the circuit court as an original action . . . or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court" the trial court may "modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances . . . "

the twelve statutory best interest factors," and that it is "of such magnitude to have a significant effect on the child's well-being." *Id.* at 512.

In contrast, a moving party who seeks only to modify parenting time operates under the legal framework set forth by *Shade v Wright*, 291 Mich App 17, 28-30; 805 NW2d 1 (2010). See *Lieberman*, ___ Mich App at ___; slip op at 7. If a proposed change in parenting time alters a child's custodial environment,[7] the applicable standard for demonstrating proper cause or a change of circumstances is the standard set forth in *Vodvarka*. *Lieberman*, ___ Mich App at ___; slip op at 7. If a modification in parenting time would not alter a child's established custodial environment, however, normal life changes that would not amount to a change of circumstances under *Vodvaraka* may nonetheless constitute a change of circumstances sufficient to modify parenting time. See *Shade*, 291 Mich App at 31. A trial court is prohibited from reopening a custody matter and holding a hearing on a child's best interests[8] unless the moving party first establishes proper cause or a change of circumstances under the applicable legal framework. *Lieberman*, ___ Mich App at ___; slip op at 8.

Plaintiff was clearly seeking to modify custody in this case, so the trial court was not permitted to revisit the existing custody order and assess the child's best interests unless plaintiff first established proper cause or a change of circumstances under the restrictive standard set forth in *Vodvarka*. *Lieberman*, ___ Mich App at ___; slip op at 8. The majority opinion fails to address this threshold inquiry before concluding that the child had an established custodial environment with both parents and discussing the trial court's best-interest analysis under MCL 722.23. Accordingly, the majority applies an improper legal framework for reviewing plaintiff's motion to change custody. *Lieberman*, ___ Mich App at ___; slip op at 7-8.

Applying the proper threshold inquiry, plaintiff failed to demonstrate proper cause or a change of circumstances under *Vodvarka* sufficient to allow the trial court to reopen the custody matter. Plaintiff testified that a change of circumstances occurred because he had a house and a "stable environment" while defendant had moved multiple times since the parties' divorce. The record reveals that defendant moved to Howell from Pinckney in October 2014, only a short distance away, because the court awarded plaintiff the marital home in the divorce. In August 2015, *plaintiff* moved from Pinckney to Livonia. Defendant remained in Howell until after plaintiff moved, changing residences only once within the city due to a rodent issue at her apartment, until she married Tiernay in September 2015, moving then to Marine City.

---

[7] MCL 722.27(1)(c) provides that a custodial environment exists if "over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort."

[8] If the court reaches a best-interest hearing, and if a proposed change would not alter a child's established custodial environment, the moving party must prove by a preponderance of the evidence that a change is in the child's best interest. See *Pierron v Pierron*, 486 Mich 81, 93; 782 NW2d 480 (2010). Alternatively, if a proposed change would alter a child's established custodial environment, the moving party must prove that such a change is in the child's best interests by clear and convincing evidence. *Id.* at 92-93.

The referee determined that plaintiff satisfied the threshold showing of a change of circumstances in light of defendant's "intrastate move, [the child] obtaining school age, . . . and the impossibility of maintaining the current parenting time order." The trial court stated at the hearing on defendant's objections to the referee's recommendation that it found proper cause or a change of circumstances because defendant had "married a Canadian citizen and moved from Howell to Marine City into a temporary residence with her parents." The court stated it was "admittedly pessimistic" about defendant's "quick second marriage to . . . a once divorced man." These circumstances were not sufficient to satisfy the restrictive standard set forth by *Vodvarka*.

Regarding defendant's intrastate move, in *Dehring v Dehring*, 220 Mich App 163, 166-167; 559 NW2d 59 (1996), this Court held that an intrastate move, in and of itself, does not constitute proper cause or a change of circumstances sufficient to allow a trial court to revisit an existing custody decision. *Dehring* was decided before the Legislature enacted 2000 PA 422. In *Sehlke v Vandermaas*, 268 Mich App 262; 707 NW2d 603 (2005),[9] this Court revisited the holding in *Dehring* in light of the newly enacted MCL 722.31. The *Sehlke* Court explained that "[w]hen *Dehring* was decided, there was no statutory requirement that parents obtain permission of the court before moving the child's domicile intrastate." *Sehlke*, 268 Mich at 264. By enacting MCL 722.31, the *Sehlke* Court explained, the Legislature "acted to clearly define the public policy in this state regarding parental moves" and did so "in a manner inconsistent with our holding in *Dehring*." *Id.* at 265. Therefore, the Court held that *Dehring* "has been overruled by statute *in those cases for which MCL 722.31 applies*." *Id.* at 265-266 (emphasis added).[10]

As discussed earlier, the plain language of MCL 722.31 only applies in cases in which a relocating parent seeks to move more than 100 miles away, regardless of whether the proposed move would bring the child beyond state borders. See *Gagnon*, 295 Mich App at 566 ("On its face, MCL 722.31 is only applicable when a parent attempts to change the domicile of a child to a location that is over 100 miles away."). To the extent, then, that a party moves less than 100 miles away, *Dehring* controls and such a move, like the one in this case, cannot independently constitute proper cause or a change of circumstances sufficient to revisit a custody order.[11]

---

[9] *Sehlke* was reversed in part on grounds unrelated to the issues presented in this opinion at 474 Mich 1053 (2006).

[10] I disagree with this Court's conclusion in *Sehlke* that an amendment of MCL 722.31, which concerns changes in domicile, affected the manner of deciding whether such a change warrants revisiting a trial court's custody determination. These are independent inquiries, and the Legislature demonstrated no intention of changing that fact through an alteration of the rules affecting domicile.

[11] Notably, in *Powery v Wells*, 278 Mich App 526, 527; 278 Mich App 526 (2008), a mother filed an appeal, arguing that "the trial court erred in holding an evidentiary hearing because her move from Ludington to Traverse City was less than 100 miles and, therefore, was insufficient to constitute a change of circumstances warranting an evidentiary hearing on the best-interest factors of MCL 722.27(1)(c)." The *Powery* Court disagreed and affirmed the trial court's decision to hold a best-interest hearing because it concluded that the proposed move would alter

The fact that the defendant moved and married a Canadian citizen after the divorce[12] and the fact that the parties' child had attained school age are nothing more than "normal life changes (both good and bad) that occur during the life of a child." *Vodvarka*, 259 Mich App at 513; see also *Gerstenschlager v Gerstenschlager*, 292 Mich App 654; 808 NW2d 811 (2011) ("The fact that a child is growing up, the fact that a child has started high school, and the fact that the child faces scheduling changes related to school and extracurricular activities are the type of normal life changes that occur during a child's life and that do not warrant a change in the child's custodial environment.") (quotation marks and citation omitted). Accordingly, plaintiff failed to demonstrate proper cause or a change of circumstances sufficient to allow the trial court to reopen the custody matter, and the trial court abused its discretion by reopening the matter and awarding plaintiff physical custody of the child.

Moreover, even if proper cause or a change of circumstances did exist, the trial court erred by determining that granting plaintiff sole physical custody was in the child's best interests. The trial court found that an established custodial environment existed with both parents and that awarding plaintiff sole physical custody could alter that environment. Defendant does not contest this determination on appeal. When a change of custody affects a child's established custodial environment, the proponent of the change bears the burden of proving by clear and convincing evidence that the change is warranted under the best-interest factors in MCL 722.23. *Jack v Jack*, 239 Mich App 668, 671; 610 NW2d 231 (2000). The trial court concluded that plaintiff proved by clear and convincing evidence that the change of custody was in the child's best interests after finding that factors (b), (c), (d), (e), (h), and arguably (*l*) favored plaintiff, while all other factors were neutral. In my opinion, these factors should have been considered either neutral or as favoring defendant. Plaintiff did not present any evidence that would rise to the level of "clear and convincing" to support a change of the child's physical custody.

Factor (b) concerns the "capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." The majority opinion cites the fact that defendant removed the child

---

the child's established custodial environment. *Id.* at 528. Like the majority opinion in this case, the *Powery* Court failed to address the threshold inquiry of whether there was proper cause or a change of circumstances before assessing the child's established custodial environment and discussing the trial court's best-interest analysis. Accordingly, the *Powery* Court seemingly operated under an improper legal framework. See *Lieberman*, ___ Mich App at ___; slip op at 7-8. The holdings in *Powery* and *Dehring* appear to conflict.

[12] See *Allen v Belonga*, unpublished opinion per curiam of the Court of Appeals, issued July 20, 2010 (Docket No. 295753) ("A parent's marriage or remarriage is generally a normal life change that occurs in the life of a child[.]"); *Sinha v Newberry*, unpublished opinion per curiam of the Court of Appeals, issued December 28, 2004 (Docket No. 257776) ("[Remarriage] is just a normal life change; and it does not, i[n] and of itself, amount to a fact that would have a significant impact on the child's wellbeing."); *Atkinson v Knapp*, unpublished opinion per curiam of the Court of Appeals, issued June 9, 2015 (Docket No. 324487) ("[A] remarriage and move are normal life changes following a divorce.").

from Down on the Farm preschool, failed to enroll the child in a new preschool, and stopped taking the child to church as evidence that factor (b) favored plaintiff. However, defendant explained that she only removed the child from Down on the Farm because plaintiff could no longer afford it and she had not reenrolled the child in preschool after moving to Marine City because she was waiting to receive the court's ruling on her motion to change domicile. Evidence showed that during the time the child was enrolled at Down on the Farm, defendant drove the child to the daycare despite the fact that it was significantly out of her way because she wanted the child to have consistency. Further, defendant explained that she only stopped taking the child to church on the weekends plaintiff had parenting time because it was "too emotionally hard" on the child for her to "pick him up, take him to church, and then drop him back off" with plaintiff, so she began taking him only every other week. Defendant testified that plaintiff does not attend church. In my opinion, this evidence demonstrates that defendant was highly responsive to the child's emotional and educational needs. This factor should have been considered neutral if not favoring defendant.

Factor (c) concerns the "capacity of the parties involved to provide the child with food, clothing, medical care or other remedial care . . . ." The record reveals that both parties took the child to medical appointments and both were financially able to care for the child and to provide insurance. Although evidence suggests that the child had several dental issues, it is not clear that defendant was the cause of these issues. Defendant testified that she brushed the child's teeth with training toothpaste, flossed his teeth, and had the child use a fluoride rinse because he did not like the texture of fluoride toothpaste. She agreed that "maybe one or two times" she allowed the child to eat food or candy when he woke up during the night, but this admission alone is insufficient to tip the scales in favor of plaintiff. Further, contrary to the majority's contention, evidence showed that at the time of the hearing, defendant agreed that the child should be vaccinated, but the parties disputed whether the vaccination should occur in the United States or Canada. In my opinion, this dispute was insufficient to support a finding that factor (c), which involves the *capacity* to provide the child with food, clothing, or medical care, favored plaintiff. This factor should have been considered neutral.

Factor (d) addresses the "length of time the child has lived in a stable, satisfactory environment . . . ." There is no dispute that the parties were both able to provide a safe environment for the child. Following the divorce, defendant was required to move from the marital home because the trial court awarded the home to plaintiff in the divorce. She moved to Howell, only a short distance from Pinckney, and stayed in that location until after plaintiff sold the Pinckney residence and moved to Livonia, a significant distance from the child. Although defendant moved from an apartment to a condo while she was living in Howell, this was only due to a rodent issue and represents nothing other than good judgment on defendant's part. Accordingly, defendant's first two moves were no fault of her own. Further, although the trial court saw fit to penalize defendant for her "quick second marriage to . . . a once divorced man," a parent's remarriage following divorce is a normal life occurrence and does not necessarily demonstrate a lack of stability on the part of that parent. Nothing about the circumstances surrounding defendant's dating relationship with Tiernay and her subsequent remarriage were sufficient to support a finding that factor (d) favored plaintiff.

Factor (e) addresses the "permanence, as a family unit, of the existing or proposed custodial home . . . ." The trial court found that, because it denied defendant's motion to change

domicile, if plaintiff had primary physical custody, "Defendant would have no need to maintain a residence in the thumb area" and the child "would be permitted to spend parenting time with his mother at her home with her husband in Sarnia." In essence, the trial court concluded that defendant should lose physical custody of the child because she too quickly married a man who lived in Canada. The trial court and the majority opinion both overlook the fact that the child has lived predominantly with defendant since birth, and that she has provided a caring and consistent environment throughout the child's life. Factor (e) favors defendant.

Factor (h) addresses the "home, school, and community record of the child." Evidence revealed that defendant removed the child from daycare at Down on the Farm because plaintiff could not afford it and then because she moved to Marine City. The trial court praised plaintiff's efforts to enroll the child into preschool in Livonia, noting that there were "objections from mother," but defendant explained that she objected because the child's attendance would have exceeded the scope of plaintiff's parenting time. This denial was fully within defendant's rights as the child's primary physical custodian. The trial court agreed that any choice of school would be a new environment for the child, and although it seemingly penalized defendant for being "transient," it failed to acknowledge that her situation was merely the result of awaiting the trial court's decision on her motion to change domicile. Under the circumstances, factor (h) should have been considered neutral.

Factor (*l*) allows a trial court to consider "[a]ny other factor . . . relevant to a particular child custody dispute." It could be argued that the trial court found that this factor favored plaintiff because the court noted that it denied defendant's motion to change domicile, meaning defendant would live in Port Huron, and defendant failed to present evidence regarding Port Huron schools while plaintiff provided evidence regarding Livonia schools. Considering that the court did not expressly state that this factor weighed in favor of either party, however, it should be considered neutral. To the extent defendant did not present evidence regarding Port Huron schools because she was awaiting the trial court's decision on her motion to change domicile, this should not have weighed against her.

In conclusion, in my opinion, the evidence demonstrated that factors (b), (c), (d), (e), and (h) were either neutral or favored defendant. Nothing from the facts of this case would support by clear and convincing evidence that a disruptive change of the child's physical custody was warranted. Accordingly, I would additionally hold that the trial court abused its discretion by granting plaintiff's motion to change custody.


/s/ Michael F. Gadola

-11-